DERN INV. CO. v. CARBON COUNTY LAND CO. et al.

No. 5928.    Decided February 1, 1938.    (75 P. 2d 660.)

M. E. *Wilson*, R. C. *Wilson*, and E. A. *Walton*, all of Salt Lake City, for appellants.

H. L. *Mulliner*, of Salt Lake City, for respondent.

HANSON, Justice.

By its complaint in this action, the plaintiff, Dern Investment Company, sought to recover judgment on a promissory note and to foreclose a mortgage covering certain real property located in Carbon County, given to secure payment of the note. The note is dated April 10, 1912, is in the principal sum of $67,308.80, payable in three years from date, bearing 8 per cent interest per annum, interest payable semiannually, and is signed by defendant Carbon County Land Company and Truth A. Milner as joint makers. The defendant Milner Corporation is named as payee. The mortgage is dated April 10, 1912, but is acknowledged April 17, 1912, and is executed by the Carbon County Land Company. On April 17, 1912, the note was indorsed and negotiated by the Milner Corporation, payee, to John Dern, the indorsement on the note being as follows:

"For value received the Milner Corporation does hereby assign, transfer and set over to John Dern the within promissory note and the indebtedness evidenced thereby, and does hereby guarantee to said John Dern that it will pay said note and the indebtedness evidenced thereby at maturity, together with all interest accruing upon the same and unpaid as the same becomes due and payable and the said Milner

Corporation does hereby waive presentation, demand, notice of non-payment, protest or notice of protest."

The mortgage was assigned by the Milner Corporation to John Dern on April 17, 1912, and the assignment was recorded July 1, 1912, in the record of the county recorder of Carbon County.

The complaint alleges the execution of the note and mortgage; that "on or about April 17th, 1912, the said defendant Milner Corporation for a good and valuable consideration negotiated, endorsed and delivered the said note to John Dern," and assigned said mortgage to him on the same date; that certain payments were endorsed on the note, the last one being for $1,000 on July 15, 1930, credited on interest; that there was a balance of $73,519.52 owing on the note, together with interest at 8 per cent per annum since January 2, 1924, less the payment of $1,000 paid July 15, 1930; that the note and mortgage had been distributed by order of the district court of Salt Lake County in the matter of the estate of John Dern, deceased, to certain named heirs of said John Dern, and had been transferred since by said heirs to the plaintiff Dern Investment Company, which company is now the owner thereof.

The defendants filed an answer and counterclaim in which they alleged by appropriate allegations the following: That on April 25, 1905, Stanley B. Milner, deceased since May 2, 1906, executed and delivered to John Dern, deceased since January 2, 1922, a promissory note payable to John Dern 3 years after date in the sum of $52,800, with interest at the rate of $1,200 every 6 months until paid, both before and after judgment; that 4,000 shares of capital stock of the Twin Falls Land & Water Company were delivered as collateral security; that said Dern delivered to said Milner the sum of $30,000 in cash and no more, and there was no consideration whatever for the remaining $22,800; that none of the heirs of said Milner had any knowledge that he had received only $30,000 from Dern and did not acquire that knowledge until

after the last payment was made on the note sued upon by plaintiff; that certain payments were made on said note by Milner and by his estate; that upon the formation of the Milner Corporation by the heirs of said Milner, said corporation, believing said note evidenced a bona fide debt owing by Milner to Dern, and at the request of Dern, executed and delivered to Dern a new note bearing date May 1, 1909, due May 1, 1910, for $52,800, with interest at 8 per cent per annum, secured by the same and additional collateral; that on January 24, 1912, a new note was executed and delivered by the Milner Corporation to John Dern in the sum of $53,785.60, due in 30 days, secured by certain shares of the capital stock of the Carbon County Land Company instead of the collateral previously given; that payments were made on each of these notes in amounts sufficient to have paid all accruing interest and to have reduced the amount of the principal owing thereon, on April 10, 1912, when the note sued on was executed, to $24,758.93, instead of the sum of $54,705.38, falsely computed and claimed by Dern as the amount owing, taking $30,000 as the real and actual principal of the original debt and not the sum of $52,800 stated in the original note; that on April 10, 1912, in addition to claiming the sum of $54,705.38 as owing on the original indebtedness, Dern then held a note and mortgage which he had acquired from Peter N. Campbell, executed by defendant Carbon County Land Company, on which there was owing the sum of $12,603.42, the two debts being computed by him to be a total of $67,308.80; that this total sum was false and fictitious, as the true total debt was $37,362.35; that on April 10, 1912, pursuant to Dern's fraudulent demands, the note and mortgage sued upon by plaintiff were executed and delivered to Dern; that while said note and mortgage are dated April 10, 1912, the transaction was completed April 17, 1912, and had as its only consideration, so far as Dern was concerned, the sum of $37,362.35 only, and said note and mortgage were wholly without consideration to the extent of $29,946.45; that as to said last named amount said note not only had no considera-

tion, but the same was usurious and unlawful, and in violation of the statute regulating interest; that at the time the note and mortgage sued on were executed and delivered Dern knew that there was owing on the loan to Milner only $24,-758.93, and that neither of the defendants knew that the amount of the debt claimed by Dern to be owing, to wit $54,-705.38, was false and fictitious to the extent of $29,946.45; that Dern, to conceal his fraudulent purpose, caused the Carbon County Land Company to come into the transaction by purchasing the Campbell note, and by having said company, together with Truth A. Milner, execute its note and mortgage to the Milner Corporation for the full amount he claimed as owing, and then falsely and fraudulently procured the Milner Corporation to guarantee said note and transfer it to Dern in violation of the statute and in fraud of both defendants and Truth A. Milner; that when the payments shown to have been paid on said note are credited to the actual loan made and the debt incurred, there has been paid the sum of $5,-882.23 in excess of the true indebtedness and interest; that the debt evidenced by the note and mortgage sued on has been fully paid, and is overpaid to the extent of $5,882.23, and said note and mortgage are illegal, null and void, and without consideration. Defendants ask judgment for the sum of $5,882.23, for the cancellation of the note and mortgage, and that the indebtedness evidenced thereby be adjudged fully paid, satisfied, and discharged.

Plaintiff's reply puts in issue the defenses and claims of the defendants. It further pleads estoppel, by way of laches, to rely on the defenses and counterclaim pleaded and also pleads the statute of limitations.

Upon a trial of the issues thus framed, the learned trial court entered judgment in favor of plaintiff and decreed a foreclosure of the mortgage involved. In its findings of fact, the court finds against defendants on all of the issues of fact raised by their answer and counterclaim and by plaintiff's reply. Defendants have assigned as error these particular findings of the trial court. Without stating in detail these

findings and defendants' assignments of error thereto, it is sufficient here to say that the ultimate position of the defendants and the foundation of all of their particular objections to the judgment of the trial court are premised upon the amount of the original loan made by John Dern to S. B. Milner on April 25, 1905, being in fact the sum of $30,000 only, and not $52,800, the principal amount named in the note of that date. From that basic premise, defendants arrive at the conclusion that the original note was without consideration and unenforceable to the extent of $22,800, and was tainted with usury or an unconscionable extortion, all of which entered into each of the renewal notes and the note sued upon so as to affect them with the same illegality and unenforceability. It is of prime importance, therefore, to examine the facts as disclosed by the evidence. This being an equity case, we are bound to review the evidence as well as consider matters of law.

The note dated April 25, 1905, executed by S. B. Milner to the order of John Dern, was produced by defendants. By its terms, the maker promised to pay the sum of $52,800, 3 years after date, with interest at the rate of $1,200 every 6 months from date until paid, both before and after judgment, interest payable each 6 months. The note recites that 4,000 shares of the capital stock of the Twin Falls Land & Water Company had been delivered as collateral security and provided for the sale of said security in case of default in the payment of the note. Beneath the signature of the maker appears the following: "Upon the full payment of the principal and interest of this note, I hereby agree to return the collateral stock enumerated herein," and signed, "John Dern." On the back of the note appear certain indorsements of interest payments. On the face of the note the word "Cancelled" appears in two places and was evidently made by a stamp. Between these two words the following is written in red ink: "Merged into a new note for $52,800 given by the Milner Corporation dated May 1, 1909, and due May 1, 1910." There is no evidence to show who stamped the word "Cancelled" on the

note, or who wrote the red ink notation as to merger. Nor does it appear with any definiteness who indorsed the interest payment receipts on the back of the note, although it does appear that Augustus Reeves was employed by John Dern as a bookkeeper, and the first indorsement bearing the initials "A R" may have been written by him.

Defendants also produced a note dated May 1, 1909, executed by the defendant Milner Corporation. This note is for $52,800, payable to the order of John Dern one year from date, and bears 8 per cent interest, payable semiannually. By its terms, the same 4,000 shares of capital stock of the Twin Falls Land & Water Company as had been given as collateral for the note of April 25, 1905, were delivered as collateral security, and in addition thereto an order upon the Twin Falls Land & Water Company for delivery to John Dern of $75,000 worth of Carey Act land contracts was also given as collateral security. On the back of this note, interest payments were indorsed showing interest paid to November 1, 1911. On the face of the note is written in ink the following: "Merged into a new note for $53,785.60 dated January 24, 1912, and due in 30 days," and signed "John Dern."

A note dated January 24, 1912, in the principal sum of $53,785.60, payable in 30 days to the order of John Dern, executed by the defendant Milner Corporation and Truth A. Milner, and bearing interest at the rate of 8 per cent per annum, was also put in evidence by the defendants. Under the terms of this note, 84,990 shares of the capital stock of the Carbon County Land Company were delivered as collateral security, with power to sell upon default. Across the face of this note is written in red ink, "Paid and cancelled." Red ink lines also appear across and over the signatures of the makers.

In connection with the note last referred to, defendants introduced in evidence a copy of the minutes of a meeting of the board of directors of the Milner Corporation dated January 25, 1912, together with a contract dated January 24, 1912, between John Dern as first party and the Milner Cor-

poration and Truth A. Milner as second parties. The minutes recite that the corporation is indebted to John Dern in the sum of $53,785.60 evidenced by a promissory note, and provide for the execution and delivery of a note in that sum by the corporation to John Dern, payable in 30 days, to be secured by 84,990 shares of the capital stock of the Carbon County Land Company, and the release and surrender by Dern of the stock and contracts of the Twin Falls Land & Water Company. The minutes also authorized the execution of the contract above referred to. This contract recites the execution and delivery of the note for $53,785.60 secured by the capital stock of the Carbon County Land Company. By the terms of this contract, Dern agreed to endeavor to purchase a note of the Carbon County Land Company in the principal sum of $15,000 held by Peter N. Campbell, secured by a mortgage on certain lands in Carbon County, and to sell said note and mortgage to the Milner Corporation. The latter corporation and Mrs. Milner agreed to obtain from the Carbon County Land Company its note in an amount equal to the sum of $53,785.60, plus the amount due on the Campbell note, including interest. This note was to be payable in 3 years, bear interest at the rate of 8 per cent per annum, and was to be secured by a mortgage on the same lands as were covered by the Campbell mortgage. Said note and mortgage of the Carbon County Land Company were to be transferred to Dern and the payment thereof was to be guaranteed by the Milner Corporation. Upon the transfer of said note and mortgage to Dern, he was to surrender to second parties the $53,785.60 note, together with the collateral given to secure it, and the Campbell note and mortgage.

Plaintiff introduced in evidence a copy of the minutes of the meeting of the board of directors of the Carbon County Land Company held April 10, 1912. These minutes recite that said company is indebted to the Milner Corporation in the sum of $225,140.80; that the Milner Corporation has requested said company to execute jointly and severally with Truth A. Milner its note for $67,308.80, to be secured by a

mortgage on certain described real property, said note to be payable in 3 years, bearing 8 per cent interest. The minutes then authorize the officers of said company to execute and deliver said note and mortgage, and to give another note to the Milner Corporation for the balance of the debt owing said corporation. Plaintiff also placed in evidence a minute of the meeting of the board of directors of the Milner Corporation, dated April 17, 1912, which authorized the transfer to John Dern of the note and mortgage executed by the Carbon County Land Company and Truth A. Milner in the sum of $67,308.80, and the execution of a guaranty of payment of said note according to its terms. It is clear that the note and mortgage sued upon in this action were executed and delivered to the Milner Corporation and were transferred to John Dern and guaranteed by said corporation, pursuant to the minutes above mentioned.

S. B. Milner, the maker of the note of April 25, 1905, died May 2, 1906. His widow and children formed the defendant Milner Corporation to take over the property belonging to his estate. This corporation assumed the debt evidenced by said note and gave its note of May 1, 1909, in renewal thereof. John Dern died January 2, 1922, and his heirs formed the plaintiff corporation to take over the property of his estate and transferred to it the note and mortgage here involved. The Carbon County Land Company was organized in 1903 and continued to exist independent of and separate from both S. B. Milner and the Milner Corporation.

From the evidence as above outlined, it is manifest that this action, as against defendant Carbon County Land Company, is one to foreclose the real estate mortgage given by said company to secure its note payable to defendant Milner Corporation, and that, as between the two defendants, the consideration for said note and mortgage is based upon an existing bona fide indebtedness owing by the Carbon County Land Company to the Milner Corporation at the time said note and mortgage were executed. It is also clear that the liability of the Milner Corporation,

sought to be enforced in this action, is based upon its indorsement of said note and its guaranty of the payment thereof, and that the consideration for such indorsement and guaranty consists in the satisfaction, surrender, and cancellation of the note dated January 24, 1912, for $53,785.60, together with the return and release of the collateral held thereunder, and the sale or transfer to the Milner Corporation of the Campbell note. Back of, and as consideration for, the note of January 24, 1912, is the indebtedness evidenced by the notes of May 1, 1909, and April 25, 1905. There can be no doubt that the pre-existing indebtedness of the Carbon County Land Company to the Milner Corporation was a sufficient consideration for its obligation under the note. Under the Negotiable Instruments Law, which has been in force in this state since 1899, an antecedent or pre-existing debt constitutes value. Section 61-1-26, R. S. Utah 1933. The pre-existing debt owing by the Milner Corporation to John Dern, evidenced by the note of January 24, 1912, would likewise furnish value for the indorsement of said note by the former to the latter. If the liability of the Milner Corporation on the note sued on is predicated solely upon its guaranty contained in its assignment of the note, so that the presumptions and principles embodied in the Negotiable Instruments Law do not apply, as contended by defendants, still its promise so given to pay said note is supported by a valuable consideration. On January 24, 1912, the defendant Milner Corporation executed and delivered to John Dern its note for $53,-785.60 in renewal of the note of May 1, 1909. At the same time, and apparently as a part of that transaction, an agreement in writing was entered into between said corporation and Dern by the terms of which Dern agreed to procure the Campbell note and transfer it to the Milner Corporation and the latter agreed to procure a note from the Carbon County Land Company in an amount equal to the sum of the amount owing on the Campbell note and the $53,785.60, plus interest accruing, which note was to be secured by a mortgage on the real property securing the Campbell note. Under this agree-

ment the Milner Corporation expressly agreed to guarantee the payment of said note. As a consequence of this transaction Dern surrendered to Milner Corporation the note of January 24, 1912, marked paid and canceled and returned and released the collateral held to secure said note and accepted the note of the Carbon County Land Company, the one sued on in this action, as payment of said note of January 24, 1912, and as the consideration for the transfer to the Milner Corporation of the Campbell note.

Under such circumstances the guaranty of the Milner Corporation appearing on the note sued on is supported by a sufficient consideration. In the case of *Worden* v. *Salter,* 90 Ill. 160, it was held that, "where the payee of a promissory note assigns the same, and guarantees its payment in satisfaction and discharge of his own indebtedness to the assignee, the existence of such indebtedness will be a sufficient consideration to uphold the guaranty"—quoting from the syllabus. See, also, *Wilson* v. *St. John's Hospital,* 92 Ill. App. 413.

To meet and defeat the right of plaintiff to recover against the defendants, thus established by the evidence so far considered, the defendants claim that, at the time the note sued on was executed and indorsed to John Dern, the Milner Corporation was not indebted to him in the sum of $53,785.60, as evidenced by the note of January 24, 1912. They assert that the true amount of said debt then actually owing was only $24,758.93, after crediting the payments admittedly made prior to January 24, 1912, and that this is the fact because the original debt and the amount actually loaned and advanced by Dern to Milner, for which the note of April 25, 1905, was given, was only $30,000 and not $52,800. The said sum of $24,758.93, plus the sum of $12,603.42, the amount owing on the Campbell note when Dern transferred it to the Milner Corporation, amounts to $37,362.35. According to defendant, therefore, this last-mentioned sum constituted the true amount of the debt, and not $67,308.80, when the note sued on was transferred to Dern, and that, accordingly, said

note was nonexistent to the extent of $29,946.45. Defendants further claim that Dern fraudulently withheld this information from the Milner Corporation and permitted it to assume and believe that $67,308.80 was the true amount of the debt owing to Dern. If the sum of $37,362.25 is taken as the true amount of the debt, it would appear that the payments admittedly made thereon to July 15, 1930, when the last payment was made, were sufficient to have paid the indebtedness in full and to have resulted in an overpayment to the extent of $5,882.23.

Defendants also rely upon the usury law, assuming, of course, that only $30,000 was advanced for the note of April 25, 1905, for $52,800. A difficulty standing in the way of applying such defense in the present case is the fact that this state had no usury law in effect when said note was executed. Section 1241, R. S. Utah 1898, was then in effect and provided that the parties "may agree in writing for the payment of any rate of interest whatever, on money due or to become due on any contract." To meet this difficulty, defendants assert that the amount exacted in excess of the true amount loaned was so extortionate and unconscionable as to be unenforceable as a matter of equity. Because of the view we take relative to the trial court's findings against defendants' contention that only $30,000 was loaned to Milner as consideration for the note of April 25, 1905, we need not discuss or consider further the questions raised by the defense of usury.

The parties have argued at length as to which of them has the burden of proof to show the consideration given for the note sued upon. The defendants assert that the evidence dispels all presumption of consideration so that the matter of consideration became one of proof, with the burden of proof upon plaintiff. They cite and rely upon *Hudson* v. *Moon*, 42 Utah 377, 130 P. 774, 777, wherein the rule is laid down that in a suit upon a promissory note the production by the defendant of evidence tending to show an illegal consideration dissipates or overcomes

the presumption of valuable and legal consideration for the note, and the burden is upon plaintiff on the whole case "of showing by a fair preponderance of all the evidence a legal and valuable consideration; and where he, as here, has specifically alleged a particular consideration to so prove it as alleged." Defendants argue, in this connection, that, since they alleged in their answer and counterclaim that only $30,000 was loaned to Milner as the full consideration for the note of April 25, 1905, and plaintiff by its reply denied such allegation, such denial is in effect an allegation that $52,800, the amount of the note, was loaned as the consideration for said note and this amounts to the allegation of a particular consideration. The reader is referred also to 35 A. L. R. 1370, and 65 A. L. R. 904, for a discussion and citation of authority on the question of burden of proof as to consideration for a note when the plaintiff is not protected as a holder in due course.

The plaintiff, on the other hand, claims that the rule laid down in the Hudson v. Moon Case is not applicable here, as there is no question of illegal consideration or allegation of a particular consideration involved in this case, but the only defense which would affect Dern's status as a bona fide purchaser of the note sued upon is merely based on a partial want of consideration, and the burden of proving such partial want of consideration is upon the defendants. Plaintiff cites and relies upon *Cole Banking Co.* v. *Sinclair*, 34 Utah 454, 98 P. 411, 131 Am. St. Rep. 885, and *Karren* v. *Bair*, 63 Utah 344, 225 P. 1094.

We have attempted to state only the basic propositions relied upon by the defendants. Several other questions of law, not so far mentioned, suggest themselves—such as the effect of the guaranty as being an indorsement and creating an enlarged liability (see *National Bank of Republic* v. *Price*, 65 Utah 57, 234 P. 231; 21 A. L. R. 1375; 33 A. L. R. 97; 46 A. L. R. 1516); whether the note sued upon is to be considered a renewal note so far as the Milner Corporation is concerned so as to involve the question as to

whether Dern was the holder of the note sued on as the purchaser thereof by indorsement and thereby make applicable the Negotiable Instruments Law relating to a holder in due course (see 8 Am. Jur., § 1021, p. 606) ; or whether he obtained said note as a renewal note subject to the infirmities of the notes which it renewed, arising from partial want of consideration, usury, or an unconscionable consideration. We deem it unnecessary to discuss and dispose of the several questions which appear to be involved and which counsel have argued. If the trial court was right in finding against the defendants on their contention that only $30,000 was loaned originally by Dern to Milner as the sole consideration for the note of April 25, 1905, then defendants' whole defense must fall, and with it all the incidental matters contained in defendants' argument. There would then be no payment or overpayment of the note or debt, no usury or unconscionable extortion, and no fraud, and no necessity for plaintiff to produce any more evidence than it did.

There are no defects appearing upon the face of the note here sued upon. It was negotiable in form. The defendants attack it by attacking the note of April 25, 1905. We must consider, therefore, the latter note. That note was negotiable in form. Under section 61-1-25, R. S. 1933, it is deemed prima facie to have been issued for a valuable consideration, and S. B. Milner, who signed it, is deemed to have done so for value. The defendants produced the note and introduced it in evidence. Under the rule laid down in *Hudson* v. *Moon,* supra, and the statute above referred to, the instrument itself imported a consideration and established prima facie that Milner signed it for value. The burden then rested upon defendants, under their own theory *(Hudson* v. *Moon,* supra), of producing evidence tending to show that only $30,000 was loaned and that there was no consideration for the difference between that sum and $52,800, the principal amount of the note before the presumptions created by the note itself would be overcome.

The extent and nature of that burden is stated in 8 Am. Jur. 595, § 1006, as follows:

"Under this view which places upon the plaintiff the ultimate burden of proving consideration by evidence that preponderates, the defendant is required to do no more than to counter-balance the presumption or prima facie case raised by the instrument."

We shall assume for the purposes of this decision that the rule announced in Hudson v. Moon is applicable to this case, and that the nature and extent of the defendants' burden is as stated in the quotation just given. Still, we think defendants have failed to carry that burden and place upon plaintiff the onus probandi of showing by a fair preponderance of all the evidence a legal and valuable consideration.

The passbook issued by the National Bank of the Republic and used by S. B. Milner in making deposits was introduced in evidence. This book was so kept by the bank as to show both the deposits and withdrawals and the periodic striking of a balance, either by way of credit or overdraft. This book showed that S. B. Milner deposited $30,000 on April 25, 1905. In addition, it showed that Milner's account was overdrawn prior to this deposit in the sum of $4,793.59. There was some testimony that Milner had borrowed from the bank approximately $22,000, which was objected to by the Comptroller of the Currency, Milner being a director of the bank. On April 25, 1905, Milner drew a check on his deposit account with said bank, payable to said bank, in the sum of $22,122.20. On the face of this check is written, "Note No. 20390-22000—Int. 122.20." On this same day he executed the note to Dern for $52,800. This note provided for the payment of interest at the rate of $1,200 every 6 months. This would equal 8 per cent on $30,000, or 4.54 per cent plus on $52,800. The passbook further showed that during the month of April, 1905, Milner drew a total of $25,245.12, including the check to the bank; that on May 1, 1905, he was overdrawn $750.20; that the checks drawn in May totaled $2,769.83. There was testi-

mony by A. C. Milner, son of S. B. Milner, that the latter did not carry any cash on hand in his safe; that he carried a checking account only with the National Bank of the Republic; that, when the Milner Corporation was organized in 1909, Milner's books were out of balance $22,800, which discrepancy could not be accounted for. The foregoing constitutes the evidence upon which defendants rely as being sufficient to overcome the prima facie case made by the note itself.

The cross-examination of defendants' witnesses disclosed these additional facts: S. B. Milner and John Dern had known each other and had had business relations since 1890. In 1905 they were interested in, and were officers of, the Tuscarora and Dexter mining interests. Besides these mining interests, Milner had extensive property holdings; he was interested in the irrigation business in Twin Falls, Idaho; in iron lands in Washington and Iron Counties; and in coal and grazing lands in Carbon County. In these three interests he had invested approximately $400,000. The witness A. C. Milner had worked in his father's office for about 10 years prior to 1905. In that year he was 29 years old. His father consulted with him and discussed some things with him. From the cross-examination of Mr. Culbertson, who was an employee of the National Bank of the Republic in 1905 and prior thereto, it appears that Milner was permitted to overdraw his account at the bank in such substantial sums as would show that he had a pretty good credit rating at the bank.

The passbook itself shows that on December 31, 1904, Milner had overdrawn at the bank $16,096.37. In January, 1905, the bank paid checks totaling $7,707.19. It would appear that the note for $22,000 was taken to cover the overdraft and anticipated withdrawals, for there appears a credit for $22,000 on January 19, 1905, written in the handwriting of Frank Knox, the president of the bank, which Mr. Culbertson thought would be a note rather than a cash item. The book reveals an overdraft at the end of the month

of January, 1905, of $684.58, despite the loan. In addition to the foregoing, the evidence shows that two interest payments were made on the note during Milner's lifetime, and that A. C. Milner, although working with his father, did not know what amount of money was received from Dern for the note of $52,800.

Is this evidence, as we have outlined it, sufficient to overcome the prima facie case made by the note itself so that it became plaintiff's duty to show by a fair preponderance of the evidence the consideration given for the note in addition to the $30,000, assuming, as we have done, that this is a case in which plaintiff would have that burden under the rule applied in *Hudson* v. *Moon*, supra? The trial court concluded, after weighing this evidence, that it was not sufficient, and found that said note was not given for a consideration of $30,000 only, but that Milner received full consideration for the same. While this is an equity case, and our review here is in effect a trial de novo on the record, still to disturb the findings of the trial court the record must be such as to persuade us that the findings which are challenged are against the fair preponderance or greater weight of the evidence, or are not supported by it. *Jensen* v. *Howell*, 75 Utah 64, 282 P. 1034.

It was defendants' duty, under the rule relied on by them, to produce evidence tending to show that $30,000 was all that was loaned or advanced by Dern to Milner, and was the only consideration for the note of April 25, 1905. The fact that the note provided for interest at the rate of $1,200 every 6 months, which would equal 8 per cent on $30,000, or 4.54 per cent plus on $52,800, would in no way tend to prove that the only consideration for the note was the loaning of $30,000. Eight per cent might have been the rate usually charged, but the parties were free to agree on any rate of interest they desired. If, as defendants contend, Milner was in trouble with the bank and needed money, why is it not as legitimate to infer from the rate of interest provided in the note that Dern was loaning money to his busi-

ness associate and acquaintance of long standing, who was, according to defendants, in financial trouble with his bank, at a lower rate of interest that that usually charged, as it is to infer that he took advantage of Milner's financial distress to extort an unconscionable advantage over him? There is nothing in either the note or the evidence to indicate that the parties had in mind any particular percentage. On the contrary, they agreed on a flat sum to be paid as interest each 6 months. How they came to agree on that sum is not shown. We cannot assume that they had 8 per cent in mind as the rate to be charged and then infer from that that only $30,000 was loaned, and further infer that no other consideration passed for the promise to pay back $52,800. This amounts to nothing more than mere conjecture, the creating of an inference out of what amounts merely to a possibility. A finding of fact cannot be based upon surmise, conjecture, guess, or speculation. *Higley* v. *Industrial Comm.*, 75 Utah 361, 285 P. 306; *Karren* v. *Bair*, supra; see note in 95 A. L. R. 162.

We are equally at a loss to see how the fact that Milner deposited $30,000 on April 25,1905, tends in any substantial way to prove that that was all he received from Dern for the note made that day. There is no evidence that Milner deposited any money received from Dern on that day, except to assume that the $30,000 deposited came from Dern. For aught that appears, Milner may have procured the $30,000 from some one else, and used the money received from Dern for other purposes. And, even assuming that he got this $30,000 from Dern, there is nothing to show that he did not receive something in addition thereto for the note of $52,800. The fact, if it be a fact, that he got from Dern the money shown as having been deposited on April 25, 1905, does not prove that that was all he got that day, or that said money was the only consideration for the note. It is true the son, A. C. Milner, testified, his father had no checking account with any bank other than the National Bank of the Republic. But the difference

between $52,800 and $30,000 may not have been made up of money loaned the date the note was given, and it may not have been given in the form of money at all. The possible considerations which might have been given for the note in addition to the $30,000 which defendants assert was actually given are so numerous and various that the probability that $30,000 was the sole consideration given seems extremely remote. To arrive at that conclusion requires drawing inference upon inference and closing one's eyes to established facts and proper inferences arising therefrom. Milner was an experienced businessman with extensive investments and holdings approximating in value more than $400,000. He had an excellent credit rating at the bank, and was there permitted to overdraw his account in large sums. The note of April 25, 1905, recites on its face that the collateral given as security, 4000 shares of the capital stock of the Twin Falls Land & Water Company had a market value of $20 per share, or $80,000. Can it be assumed that Milner, with that amount of available collateral, would engage to pay $22,800 plus $7,200 interest for the loan of $30,000 for a period of 3 years? Can it be assumed that he, with that amount of available assets, to say nothing of his other holdings, was in such difficulty over a note of $22,000 held by the bank that he would tie up that collateral on a note for $52,800 in order to get $30,000 with which to pay the note at the bank? In order to draw the inference advocated by defendants, we must answer these questions in the affirmative and make the assumptions stated therein. In addition, we must further assume that Dern took advantage of Milner's unfortunate situation and greedily turned it to his gain to the extent of doubling his money in three years, an increase of 33⅓ per cent a year.

Defendants have asserted that Milner was in difficult financial circumstances. This is not borne out by the evidence. The only obligation shown to have been owing by him was his indebtedness at the bank, evidenced by a note for $22,000. A. C. Milner testified that he knew his father's

financial condition at the time the note was given to Dern. When asked if his father was hard pressed for money, he answered, "He owed National Bank of the Republic quite a sum of money." The witness later stated, "I know it because when he died Mr. Knox called on us for the money." This note at the bank, however, was paid off April 25, 1905, more than a year before Milner died, so it must have been some indebtedness incurred after April 25, 1905, that Knox collected from the estate. The witness also testified Milner was trying to raise money and in April, 1905, he was having difficulty with the bank. The difficulty was in relation to an excess loan that was objected to by the comptroller of the currency. The amount of this excess loan was about $22,000. It may be inferred that this loan was evidenced by the note which Milner paid by his check dated April 25, 1905. The foregoing constitutes all the evidence in the record tending to show Milner was in financial distress when he gave his note to Dern. This evidence falls far short of showing that Milner was in difficult financial circumstances. It certainly does not reveal a condition which would make plausible the defendants' contention that his financial distress was so acute that he would be willing to give $2 for every dollar loaned in order to get relief. Especially is this true when it appears that at that very time he was able to give unencumbered security having a market value of $80,000 and, in addition thereto, had extensive holdings in Utah as heretofore pointed out.

A. C. Milner testified also that when the Milner Corporation was organized in 1909 an audit of Milner's books showed them to be out of balance $22,800. His testimony is that, in carrying on the business of the Carbon County Land Company and the Milner Corporation, he had been confronted with certain discrepancies in the cash accounts. The only investigation he made is described by him as follows: "We found there was a discrepancy in the books. The books were out of balance when we formed this new set of books to the extent of $22,800." They were not able to find exactly

where this discrepancy was until they found the bank passbook, heretofore referred to, after this action was commenced. He did not state how the passbook explained the discrepancy, but no doubt he assumed that the difference between the $30,000 shown deposited on April 25, 1905, and the amount of the note given to Dern that day, being the sum of $22,800, accounted for and explained the discrepancy. There is no evidence showing over what period of time the books were out of balance, although they were double entry books, where the credits had to balance the debits. For aught that appears from the evidence, the books may have been out of balance prior to April 25, 1905, or they may have become out of balance some time after that date. There is nothing in the record that would tie the lack of balance in the books to the loan from Dern to Milner. That connection must be made as a matter of inference and is to be inferred, if at all, from the fact that the discrepancies in the books amounted to $22,800, which equals exactly the difference between $52,800, the amount of the note to Dern, and $30,000. The argument amounts to this: The books, when investigated, were out of balance $22,800, but it is not shown as of what time, or in what details or items or manner. The passbook shows a deposit of only $30,000 on April 25, 1905, and on the same day a note for $52,800 was given. Therefore, Milner must have received only $30,-000 for the note. To reach this conclusion, we must assume: First, that the discrepancy in the books arose through the bookkeeping relative to this loan; and, second, that because the books reveal a discrepancy, all that Milner received on the loan was $30,000. Both assumptions arise only as a matter of conjecture and supposition, and lack the essential supporting evidence.

When all of the matters relied upon by defendants are considered together, they furnish no basis for a finding that Milner received only $30,000 for his note. They do not meet and counterbalance the prima facie case made by the note. We conclude, therefore, that the plaintiff was not called

upon to produce evidence as to the consideration given for the note of April 25, 1905, in addition to the prima facie case of consideration made by the note itself. Having reached this conclusion, there remains no barrier, so far as defendants' defenses are concerned, to the recovery of a judgment upon the note and foreclosure of the mortgage. There is no dispute in the amounts paid and credited on the note. The trial court accepted and followed the computations made by defendants' own expert on accounting, and the amount of the judgment is not here questioned by either party.

It follows that the judgment of the trial court must be, and the same is, affirmed, with costs to respondent.

FOLLAND, C. J., and MOFFAT, WOLFE, and LARSON, JJ., concur.