## JACKSON v. COLSTON et al.

No. 7199.   Decided August 31, 1949.   (209 P. 2d 566.)

See 45 C. J., Negligence, sec. 779. Res ipsa loquitur, lack of causal connection between injury and act as not cured by, see note, 53 A. L. R. 494. See also, 38 Am. Jur. 992.

*Willard Hanson, Stewart M. Hanson,* Salt Lake City, for appellant.

*Clyde & Corey, Skeen, Thurman & Worsley,* Salt Lake City, for respondent.

LATIMER, Justice.

This is an action to recover damages for the alleged burning of the lower leg of plaintiff Glendora Jackson, claimed to have been inflicted while she was undergoing weight reducing treatments administered by or under the direction of defendants Mary A. Zupo and Arthur Larron Colston.

The trial court granted defendants' motion for a directed verdict and plaintiff appeals.

Defendants Colston and Zupo, as partners, operated the Posture Form Studio located in Salt Lake City. They held themselves out as being able to assist in tissue rejuvenation, weight reduction, and relaxation of muscles and nerves and as being able to improve the movement and flexibility of joints. The devices used by defendants to achieve these results consisted of mechanical tables, oxygen and lamps. Plaintiff, having been troubled by over-weight and a weak left ankle, began defendants' regular course of treatments on March 18, 1946. That part of defendants' treatment designed to improve the weakened condition of plaintiff's left ankle consisted of the use of two lamps. The first of these, a "de-polray lamp" was placed within an inch or two of plaintiff's left ankle for a period of ten minutes during each of the eleven treatments she received. The second lamp used was a regular infra-red lamp designed to produce heat. This lamp was placed some twenty-four to thirty-six inches above plaintiff's left ankle for periods of about ten minutes as an additional part of each treatment. Plaintiff testified that after about five treatments, she noticed her ankle was becoming inflamed; that progressively it became purplish red and very painful to the touch; and that when she called this condition of her ankle to the attention of defendant Zupo, she replied: "You always get worse before you get better." Plaintiff admitted, however, that the lamps merely produced a warm, comfortable feeling during all except the last treatment she received. She stated that on this occasion she received a feeling of heat, that the leather top of the table "smelled hot," that the attendant admitted the table "smelled hot" and that she, the plaintiff, concluded the lamp should be removed after she had been given treatment for three or four minutes. Dr. Robert J. Alexander, plaintiff's physician, stated that in examining plaintiff's injured left ankle when she first reported to him on June 14, 1947, he made careful inquiry into the history of his patient

to determine the cause, and that after considering the history as given by plaintiff and eliminating other possibilities, he concluded that the electric treatment plaintiff had received at defendants' salon was the only possible cause. He also testified that any electrical heat treatment, if too strong, if given too continuously, or if applied too frequently when the tissue is not of good nutrition would be capable of producing the type of injury from which the plaintiff suffered. He further testified that a reddish appearance of surface tissue would evidence a certain amount of irritation or inflammation and that such tissue would be far more susceptible to heat and possible burn from exposure to an infra-red lamp or any electric modality that might generate heat. The doctor, on the other hand, confessed he was not acquainted with and had never operated the lamps used on the plaintiff. He was not asked nor did he express any opinion as to whether these lamps, used in the manner in which they were used by defendants, could burn the flesh of plaintiff's left ankle.

Dr. Plumb, defendants' expert witness on electricity, heat and light, testified that the "depolray lamp" was not a heat producing lamp, but simply created a very weak electromagnet capable of attracting hair-pins or small nails and that such a "lamp" could have no possible effect on the human body. He further testified that the maximum input of the infra-red lamp was 240 watts; that a controller on the lamp, operating a resistance rehostat, could reduce the input to 100 watts; and that a person would be more likely to suffer a burn from having been exposed to sunlight on a summer's day for ten minutes than he would from exposure to the infra-red lamp for the same period. In answer to the question as to whether a woman's lower leg could be burned if placed under this lamp at a distance of approximately two feet on eleven occasions where the treatments given were never oftener than every other day and where stockings and shoes were worn on every occasion except the last one or two, Dr. Plumb testified that he would say that a normal person's flesh could not be burned under these conditions.

The grounds relied upon by defendants as the basis for their motion for a directed verdict were (1) insufficiency of the evidence to establish negligence of the defendant; and (2) insufficiency of the evidence to establish that defendants' lamps caused the injury.

In granting defendants' motion, the court stated:

"I am of the opinion that the jury could do nothing more than speculate as to the cause of the injuries that the plaintiff suffered as far as this evidence is concerned."

This ruling no doubt was based on the testimony of Dr. Plumb, together with the admission of the plaintiff, that the lamp produced only a warm, comfortable feeling except on the last occasion, at which she claimed to have had a feeling of heat although she did not go so far as to characterize it as a burn.

The only question here to be decided is whether the court erred in directing a verdict for the defendants. It is fundamental that the burden rests upon the plaintiff to establish the causal connection between the injury and the alleged negligence of the defendant; *Tremelling* v. *Southern Pac. Co.*, 51 Utah 189, 170 P. 80; that the court may not permit the jury to speculate concerning defendants' liability; *Dern Inv. Co.* v. *Carbon County Land Co.*, 94 Utah 76, 75 P. 2d 660; and that the court is required to direct a verdict unless there is evidence from which the jury could reasonably find in favor of the plaintiff.

Plaintiff contends that the doctrine of res ipsa loquitur should be applied which, if considered together with plaintiff's testimony and the medical evidence on her behalf, was sufficient to require the court to submit the cause to the jury. It is unnecessary for us to rule upon whether the doctrine contended for ought to be invoked because even if we were to so decide, it would have no effect on the propriety of the ruling of the trial court. Res ipsa loquitur literally interpreted means "the thing

speaks for itself," and the rule is founded upon the theory that in certain types of cases the circumstances surrounding the injury inflicted upon the plaintiff are themselves of such a character as to justify a jury in inferring negligence on the part of the defendant in the absence of rebutting evidence. Jones, Commentaries on Evidence 2d Ed., Section 518. However, a proper understanding of the nature and scope of the doctrine makes it unnecessary to determine whether the rule should be applied in the case at bar. In any action for personal injuries arising out of alleged negligent acts or omissions of the defendant, it is incumbent upon the plaintiff to prove, first, that the defendant was negligent and, second, that the defendants' negligent acts or omissions proximately caused the injury sustained by the plaintiff. In a proper case, the doctrine of res ipsa loquitur may relieve the plaintiff of the duty of showing specific acts of negligence, but the authorities unanimously hold that the causal connection between the alleged negligent act and the injury is never presumed and that this is a matter the plaintiff is always required to prove affirmatively. Res ipsa loquitur is limited to the question of whether the defendant was negligent—it has nothing to do with the element of causation. In *Puget Sound Traction, Light & Power Co.* v. *Hunt,* 9 Cir., 223 F. 952, 955, 139 C. C. A. 432, the rule is stated as follows:

"* * * In every personal injury case the plaintiff must establish two propositions: First, that the defendant was negligent; and, second, the causal connection between the negligence and the injury complained of. Negligence is sometimes presumed, as in cases where the doctrine of res ipsa loquitur applies, or where there has been a violation of a statutory duty, but the proximate cause of an injury is never presumed. On this question there is no conflict of authority." See also *Howe* v. *Michigan Cent. R. Co.,* 236 Mich. 577, 211 N. W. 111; *Alabama Power Co.* v. *Bryant,* 226 Ala. 251, 146 So. 602; *Allen* v. *Republic Bldg. Co.,* Tex. Civ. App., 84 S. W. 2d 506.

In the instant case, apart from the question of negligence, we have the problem of whether the injury to plaintiff's left ankle was caused by the heat from defendants' lamps. The

fact that the plaintiff was injured does not raise a presumption or authorize an inference that the defendants' acts or omissions proximately caused the injury. The important question in the case before us, therefore, is not, should the doctrine of res ipsa loquitur apply to establish negligence, but rather, is there any evidence from which a jury could find that the lamps used by defendants were the proximate cause of plaintiff's injuries? On this question defendants' expert witness, Dr. Plumb, testified as to the construction, operation and heat producing effects of both lamps. As to the first, or what was identified as the depolray lamp, his testimony was that it could have no possible effect upon the human body and that it would not produce more heat than an ordinary 25-watt globe; that it was in the nature of a magnet and that a greater amount of magnetism passes through the body of every one by reason of the earth's natural magnet than could be created by this lamp. Apart from this testimony, there appears to be little contention on the part of plaintiff that this lamp could have contributed to her injury. In testifying as to the other lamp used by defendants' Dr. Plumb testified that although an infra-red lamp was heat producing, it would produce no more heat than an ordinary globe of equal wattage, and that it would not be possible to burn a normal person's flesh when the lamp was used as plaintiff testified it had been used on her. Plaintiff's evidence, by way of rebuttal, consisted of the testimony of Dr. Alexander. He first examined plaintiff some thirteen months subsequent to the last treatment. He testified that any infra-red lamp if placed close enough to tissue of low resistance for a long enough period of time could cause a burn. However, he was not interrogated as to the burning effect of the lamp on plaintiff's ankle; that is, whether or not she could have been burned by the lamp without being conscious of pain or discomfort. Neither was he interrogated as to the characteristics of plaintiff's skin such as being of low resistance or susceptible to heat nor concerning the effect on plaintiff's skin of an infra-red lamp, similar to

the one which was used by the defendants, when it was placed some two or three feet over plaintiff's ankle for periods of approximately ten minutes, on eleven separate occasions, at intervals never oftener than every other day. Absent also is any testimony as to the effect of the lamp when the skin was insulated from the heat by shoes and stockings, plaintiff having established that part of her injuries were on her foot which was at all times shielded from the light by her shoes and stockings. Whether the conditions presented by plaintiff would meet Dr. Alexander's test of too close, too long and to often remains unanswered.

Analyzing the testimony to determine whether or not plaintiff has sustained a burden of proving a causal connection between the alleged negligent acts of the defendants and the injury to the plaintiff, we find that under the present record the jury would be required to speculate and guess on too many elements in the chain of causation.

We have not overlooked plaintiff's contention that defendant Zupo's admission substitutes for the missing elements. We have considered this in connection with the facts and circumstances surrounding the making of such a statement and have concluded that the claimed admission does not strengthen plaintiff's cause. Plaintiff testified she became acutely conscious of the heat at the time of the eleventh treatment. This treatment was given some time in the month of April, 1946. Some three months later, according to her story, she went to defendants' place of business and exposed her injured ankle. After observing her condition, defendant Zupo is reported to have made the following statement to Mrs. Jackson: "Oh, yes, we have burned you and I am sorry." This admission was of such a character that defendant Zupo could not have had knowledge of the facts declared or else it was based on Mrs. Jackson's claim that she had been burned. Defendant Zupo was not a physician or surgeon. She did not know the

effect of an infra-red lamp on a human body, apart from the manufacturer's advertisement, and she did not possess the qualifications necessary to determine the cause of Mrs. Jackson's injury. The statement attributed to her was not made coincidental with the claimed burning or at a time when she could feel or determine the presence of any unusual amount of heat or at a time when she could observe the reaction of the plaintiff to the treatment. The statement as and when made had to be based on a diagnosis of the nature and cause of the injury, long after it had been received, and to be of any value the conclusion must be weighed by the qualifications of the person expressing the opinion. A reading of Dr. Alexander's testimony convinces us that he had considerable difficulty in determining the cause of plaintiff's condition. He made a thorough examination before he was able to eliminate some pulmonary embolism or ulcerated varicose veins as being responsible for plaintiff's injury. In spite of Dr. Alexander's admitted qualifications, he relied to some extent on Mrs. Jackson's history to form an opinion that she had been burned. If a qualified physician and surgeon encounters difficulty in determining the cause of an injury, a cursory inspection by an untrained mechanical table operator would be insufficient to permit her admission to establish causation.

Inasmuch as plaintiff failed to sustain the burden of proving her injury was proximately caused by any alleged negligence of the defendants, the court properly directed a verdict.

The judgment is affirmed. Costs to appellants.

PRATT, C. J., and McDONOUGH, J., concur.

WADE, Justice.

I dissent. I cannot agree that there is insufficient evidence of causal connection between the treatments appellant received and her injuries. Two medical experts testified

positively that her injuries were due to electrical burns. Appellant testified that the injured portion of her left foot had not been exposed to any heat applications other than respondents' lamp treatments. Dr. Alexander testified that regardless of the wattage of any infra-red lamp, it would be capable of burning if placed close enough, and long enough and the time used is prolonged and the tissues with which the lamp comes in contact has a low resistance. The mere fact that it was not directly proved that the placing of the lamp two or three feet from appellant's foot for ten minutes each time for eleven times, was a placing of the lamp too closely for a sufficiently long time to cause the injury does not make such proof speculative. Such facts are a natural inference from the fact that appellant suffered an electrical burn which the jury could reasonably find from the evidence came from no other source than the lamp used by respondents in their treatment of appellant, and from the fact that such a lamp could cause such an injury The testimony of respondent's expert witness is not necessarily inconsistent with such a conclusion, since he testified that the infra-red lamp could not have burned a normal person. There was no evidence that the condition of appellant's foot at the time of the injury was normal. Dr. Alexander, who testified that he frequently used such lamps in his early practice positively stated that no matter what the wattage of such a lamp, it could burn. I cannot agree, therefore, that the evidence of causal connection was too speculative to submit to the jury and in my opinion the court erred in directing a verdict in favor of respondents.

WOLFE, J., concurs in the dissenting opinion of WADE, J.