310 P.2d 523

Geraldine HUGGINS, Plaintiff and Appellant,

v.

N. Frederick HICKEN, Defendant and Respondent.

No. 8497.

Supreme Court of Utah.

May 7, 1957.

234

James E. Faust, Salt Lake City, for appellant.

Skeen, Worsley, Snow & Christensen, John Crawford, Jr., Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

In a malpractice action against Dr. N. Frederick Hicken, the trial court, setting aside a verdict for plaintiff dismissed the action. From the judgment of dismissal plaintiff appeals.

Plaintiff, Geraldine Huggins, who had complained of severe chest pains, consulted with Dr. Hicken on July 26, 1954, and was

examined by his associates, Drs. Huckleberry and McAllister, the following two days for kidney and gall bladder ailments. Being advised that her gall bladder was nonfunctioning and diseased, defendant submitted to an operation for the removal of her gall bladder. She was admitted to the L. D. S. Hospital on July 31, 1954, having signed the necessary consent for treatment.

On August 2, plaintiff was operated on by Dr. Hicken, who removed her gall bladder. Plaintiff does not question the care exercised during the operation; but rather she asserts that Dr. Hicken was negligent in postoperative treatment both while she was hospitalized, and while she was convalescing at the home of a cousin in Granger, Utah.

After the operation plaintiff suffered pulmonary complications allegedly culminating in a collapsed lung, causing pain and suffering and resulting in loss of employment, all of which she attributes to lack of postoperative care. She relies on Dr. Hicken himself as an adverse witness to establish the standard of care under question here following a gall bladder operation. The medical standard claimed included "turning and coughing" the patient every two hours. Dr. Hicken explained that after upper abdominal surgery, when the abdominal muscles are painfully used, the tendency exists to breathe shallowly. This continued habit may result in a partial filling of the lung cells and an eventual collapse of the lung. Deep breathing and coughing tend to loosen the accumulated matter and aid in using the full capacity of the lung. According to Dr. Hicken, the medical standard of physicians within the community would require coughing and turning somewhere between every two hours, the routine maximum standard, and every six hours, the minimum standard.

Miss Huggins also claims that Dr. Hicken failed while she was hospitalized to observe elevation of pulse and temperature and to take remedial measures; failed to observe the pain plaintiff experienced, which required sedation; and failed to take X-rays to determine the cause of continued chest pains.

All of these claims, excepting, perhaps, the breach of the standard of care of coughing and turning, are unsupported by any expert testimony. In the case of Fredrickson v. Maw, 1951, 119 Utah 385, 387, 227 P.2d 772, 773, this court said:

"The better-reasoned cases announce a rule of law to the effect that in those cases which depend upon knowledge of the scientific effect of medicine, the results of surgery, or whether the attending physician exercised the ordinary care, skill and knowledge required of doctors in the community which he serves, must ordinarily be established by the testimony of physi-

236

cians and surgeons. There is, however, another well-recognized rule holding that when facts may be ascertained by the ordinary use of the senses of lay witnesses, it is not necessary that expert testimony be produced and relied upon."

■ In that case, an inference of negligence was allowed to be drawn from lay testimony where an object had been left by the doctor in an incision in his patient. Plaintiff cites the above-quoted case; also James v. Robertson, 1911, 39 Utah 414, 117 P. 1068 for the proposition that where there is an obvious breach of due care, no expert testimony is necessary to establish negligence. In the James case, the doctor denied the facts alleged by the plaintiff, but admitted that the standard of care was such as not to. allow contact of carbolic acid with the cornea of plaintiff's eye. There, no expert testimony was needed to establish a reach of the standard. In the Fredrickson case, medical knowledge was not necessary to infer negligence in failing to remove an object from an incision, as it is necessary in the present case. Postoperative care of a gall bladder operation depends upon complex scientific knowledge and cannot be ascertained by common lay knowledge; consequently, the standard of care should be established by the testimony of physicians and surgeons, the absence of which testimony will result in no evidence to submit to a jury.

Although the hospital record does not specifically note that Miss Huggins was "turned and coughed" as such as often as once every two hours, it does show orders entered and services rendered which necessarily involved movements of the abdomen and chest, such as: Giving shots, baths and enemas; "being made comfortable;" inserting rectal tubes; and being catheterized. In fact the hospital record discloses 18 of such services in a period of 43 hours. Such evidence construed even most favorably to plaintiff cannot ignore the fact that action and movement took place often.

■ In view of this evidence no finding could reasonably be made that the patient was not turned and coughed at intervals sufficiently frequent to meet even the maximum standard as testified to by the doctor. Furthermore, orders were given by the defendant for regular turning and coughing as well as for other treatment and medication. If such orders were not carried out, the failure to do so was the responsibility of the hospital personnel and not of the doctor, unless the knowledge of such laxity was in some manner brought to the attention of the doctor and he failed to take steps to remedy the situation which the evidence does not reveal. The applicable rule is well stated by Justice Rutledge in the case of Hohenthal v. Smith, 72 App.D.C. 343, 114 F.2d 494; 496:

"* * * where employees of the hospital are negligent in carrying out the surgeon's instructions as to treatment after the operation, the overwhelming weight of authority holds that the surgeon is not liable in the absence of a showing that he was negligent in giving the instructions or selecting the persons to carry them out, that he was present and could have avoided the injury by exercising due care, or that his special contract relative to the negligent employee was such as to make the doctrine of respondeat superior applicable. * * * Part of the service furnished to the patient and charged for by the hospital is the assistance of nurses, interns and attendants in caring for the patient after the operation pursuant to instructions given by the operating surgeon. They perform the duty of their employer (the hospital) to the patient when they carry out the instructions of the doctor * * *."

Plaintiff contends that so long as there remains some evidence, lay or otherwise, upon which a finding of negligence could rest, the case should go to the jury. This is undoubtedly correct if the facts testified to are such as to show that the medical standard of care shown by expert evidence was breached by defendant. Absent such evidence, in a case involving complex post-operative treatment, inferences based on mere lay knowledge should not be submitted to a jury. As this court said in Forrest v. Eason, 1953, Utah, 261 P.2d 178, 180:

"Giving the case to the jury under such circumstances (when certain fluids were injected into the veins by a naturopath), with no showing that use of the substances was not in accordance with accepted standards of professional skill, * * * with no showing that any of the substances were deleterious, allows the jury to indulge in that type of speculation unpermitted by this or other courts generally.

"Counsel lists authorities holding a treatment may indicate so plainly a lack of due care as to dispense with expert testimony. We agree, but this is not such a case. Plaintiff did not show that the treatments plainly indicated unacceptability under standards of skill espoused by the professions authorized to treat the ailment, and adduce nothing to show such treatments in fact resulted in injury. To charge a professional man under such circumstances woud make him an insurer. We believe this case to be of the type requiring expert testimony." Parenthesis added..

See in support of the above quotation, Fredrickson v. Maw, supra; Jackson v. Colston, 1949, 116 Utah 295, 209 P.2d 566; Anderson v. Nixon, 1943, 104 Utah 262, 139

P.2d 216; Edwards v. Clark, 1938, 96 Utah 121, 83 P.2d 1021; Passey v. Budge, 1934, 85 Utah 37, 38 P.2d 712; Baxter v. Snow, 1931, 78 Utah 217, 2 P.2d 257; Wigmore Evidence, (2d Ed.) Vol. VII, page 453, Sec. 2090.

The reasoning in all these cases requiring expert testimony would likewise apply to the postoperative care plaintiff received while convalescing at the home of her cousin in Granger, Utah, since no such medical opinion was adduced at trial.

Similar principles likewise apply to the proximate causation of the injuries alleged. As a general rule in a malpractice action, expert testimony must be produced to show that the injuries alleged were probably caused by the lack of due care of defendant. In the absence of such evidence, there is nothing upon which a jury can base its finding on the proximate cause of the injury. The evidence must be substantial and must, in cases of this complex type, have foundation in expert medical testimony. Jackson v. Colston, 1949, 116 Utah 295, 209 P.2d 566; Anderson v. Nixon, 1943, 104 Utah 262, 139 P.2d 216; Edwards v. Clark, 1938, 96 Utah 121, 83 P.2d 1021.

We conclude that the facts established and reasonable inferences of mere lay knowledge arising thereon did not support (1) the breach of a standard of care of doctors within the community, and (2) the proximate causation of the alleged injuries, even assuming the negligence. The trial judge was correct in setting aside the jury verdict.

Judgment affirmed. Costs to respondent.

CROCKETT, WADE, WORTHEN, and HENRIOD, JJ., concur.