423 P.2d 663

Drexel B. DICKINSON, a minor, by Dell B. Dickinson, Guardian ad litem and Dell B. Dickinson, individually, Plaintiffs-Appellants,

v.

William MASON, M.D., Defendant-Respondent.

No. 10591.

Supreme Court of Utah.

Feb. 8, 1967.

---

5. Pace v. Parrish, footnote 2 above.

**384**

Frank E. Diston, Brayton, Lowe & Hurley, Salt Lake City, for appellants.

Skeen, Worsley, Snow & Christensen, John H. Snow, Salt Lake City, for respondent.

TUCKETT, Justice:

In this action the plaintiffs seek to recover damages against the defendant and claim that the defendant-respondent was guilty of malpractice in the treatment of an injury sustained by Drexel B. Dickinson. At the conclusion of the plaintiffs' evidence the trial court granted the defendant's motion for an involuntary dismissal and from that ruling appellants appealed to this Court.

The plaintiff Drexel B. Dickinson, a resident of Salt Lake County, sustained a severe laceration from a butcher knife on his right index finger while he was visiting with relatives in the Panguitch area. The laceration was long, curving and oblique and was deep enough to sever the bone in the middle phalanx of the finger. The muscles, tendons, nerves and blood vessels supplying the finger were likewise severed.

The child was taken to the hospital at Panguitch where the finger was treated by the defendant, a physician and surgeon engaged in general practice in that area. The respondent was not called as the witness in the trial of the case, but there was evidence that the doctor stated he was trying to effect a bone graft in the hope that the finger could be saved. The injury and treatment occurred on August 11, 1959, and the boy returned to his home in Salt Lake County on August 13, 1959. On the evening of August 14 the child's mother telephoned Doctor Glenn Wilson, a general practitioner in Salt Lake County, requesting medication for pain being suffered by Drexel; however, the doctor refused to prescribe such medication.

Drexel was seen by Doctor Wilson on the morning of August 15, at which time it was noted that there was swelling at the base of the finger and upon removing the bandage it was discovered that the finger was black, without feeling or sensation, and

that it would probably require amputation. Drexel was hospitalized the following day and an amputation was effected by an orthopedic surgeon.

It is the claim of the plaintiffs that the defendant was negligent in treating the finger of Drexel in that he applied the bandage so tightly, that it cut off the circulation, and resulted in gangrene setting in. It was Doctor Wilson's opinion and he so testified that the gangrene occurred because of the constrictive type of bandage applied by the defendant. He also testified that the finger "should have been a normal functioning finger if it had been properly treated." On cross-examination the doctor testified that when he first saw the finger there was no loss in the total length of the finger, however, the doctor conceded that he had testified upon deposition, and it was still his opinion, that "this finger was almost completely amputated by the injury and I think any doctor would have felt fortunate in getting a normally functioning finger from this." The doctor also stated that when there is but two-thirds of a finger remaining after injury, the probabilities are the remaining portion of the finger would have required amputation. He adhered to the testimony given in his deposition as follows: "I would have recommended an amputation, anyway, because he had two areas of the finger that were severed, one at the tip and one at the middle of the second digit, so that he would

have had approximately two-thirds of the finger left and two-thirds of the right index finger get in the way." Doctor Wilson admitted that the decision as to whether the remaining portion of the finger should be immediately amputated, or an attempt be made to save the finger depended upon the "clinical knowledge" of the attending physician. He agreed that the judgment of one physician might differ from that of another physician in respect to the course of treatment to be followed. At the conclusion of the examination of Doctor Wilson, the trial judge asked whether or not there would have been any difference in the hand "as we now find it" if the appellant had gone to a surgeon for immediate treatment. The doctor testified that the end result would have been identical.

Doctor Wilson testified that when a finger is bandaged too tightly gangrene begins almost at once, and pain would soon become apparent. He added that in this case the pain would have been apparent by the morning of August 13 and at that time the pain would be fairly severe and of a kind that would require attention. The testimony of the minor plaintiff and his parents was to the effect that on the morning of the 13th the defendant briefly saw the boy before he began the trip to his home in Salt Lake County, but he did not remove the bandage at that time. On August 14 Drexel's mother contacted Doc-

tor Wilson due to intense pain being experienced by Drexel, and it was not until August 15 that Doctor Wilson did in fact see the child and remove the bandage.

At the conclusion of the plaintiffs' testimony the trial judge ruled that the evidence failed to show that the treatment of Drexel's finger by the defendant did not meet the standard of ordinary skill, care, and knowledge of the community in which the defendant practices, and further that the plaintiffs' evidence by medical experts did not show that the ultimate result was proximately caused by any negligence on the part of the defendant. We are of the opinion that the ruling of the trial court was in accordance with prior decisions of this Court dealing with these problems.[1]

█ It will be noted that the only expert testimony in the case comes from Doctor Wilson, the plaintiffs' family physician. Doctor Wilson was of the opinion that there was a possibility that the finger might have been saved with treatment other than that employed by the defendant, however, he also testified that in all probability the finger would have required amputation because the bone in the finger had already been amputated. Had the court submitted the matter to the jury on the case as made by the plaintiffs it would have required the

jury to speculate and to base its verdict upon conjecture.[2] The law does not impose upon a physician or surgeon the duty of guaranteeing that his treatment will achieve good results, but on the contrary, the law imposes upon him the duty to employ that care and skill required of men of similar calling, and under similar circumstances.

The order of dismissal is affirmed. Costs to defendant.

CROCKETT, C. J., and HENRIOD, CALLISTER, and ELLETT, JJ., concur.

---

1. Anderson v. Nixon, 104 Utah 262, 139 P.2d 216; Forrest v. Eason, 123 Utah 610, 261 P.2d 178; Marsh v. Pemberton, 10 Utah 2d 40, 347 P.2d 1108; Huggins v. Hicken, 6 Utah 2d 233, 310 P.2d 523.

2. Edwards v. Clark, 96 Utah 121, 83 P.2d 1021; Alvarado v. Tucker, 2 Utah 2d 16, 268 P.2d 986.