Gail O. HANSEN, Plaintiff
and Appellant,

v.

John HEATH, Personal Representative
of the Estate of James Woo, Deceased,
Defendant and Appellee.

No. 920225.

Supreme Court of Utah.

April 23, 1993.

John Farrell Fay, Jim Mouritsen, Mitchell R. Jensen, Salt Lake City, for plaintiff.

Roger H. Bullock, Salt Lake City, for defendant.

HALL, Chief Justice:

Plaintiff Gail Hansen appeals a jury verdict of no cause in her action to recover for injuries sustained in an automobile accident involving James Woo.[1] We affirm.

## I. FACTS

On July 15, 1988, Hansen was injured when Woo's vehicle struck her vehicle from behind. At the time of the accident, Woo, then 78 years old, was returning from a doctor appointment at the Veteran's Administration Hospital ("VA"), where he was receiving on-going treatment for shortness of breath associated with lung and heart disease. Woo's medical records revealed that on the day of the accident, his condition was improving and he was sent home with no restrictions on driving.

At the accident scene, paramedics examined Woo and later noted in their report that Woo had possibly suffered a syncopal episode. A syncopal episode occurs when a person suddenly loses consciousness without warning. It appears that Woo did not volunteer any information to the paramedics concerning any loss of consciousness. Instead, the paramedics reached that conclusion independently.

---

1. Woo died while this action was pending and is represented here by John Heath, the personal representative of Woo's estate. We will refer to Heath as the party defendant and to Woo personally when necessary.

Shortly after the accident, Woo was transported to the VA, where he told his treating physician that he had suddenly lost consciousness without warning and that he remembered nothing about the accident until a woman was pulling him from his car after the collision. Woo's physician diagnosed his condition as "syncope and CHF (coronary heart failure)." Woo was admitted to the hospital for six days and received treatment for the syncopal episode.

Hansen filed a complaint on February 3, 1989, alleging that Woo negligently caused the accident that injured her. Woo responded and set forth the affirmative defense that he had suddenly and without prior warning lost consciousness at the time of the accident and was therefore not liable for Hansen's injuries.[2] Woo died six months after the complaint was filed. He was never deposed.

Prior to trial, Hansen filed a motion to strike and a motion in limine to exclude Woo's statement to his treating physician that he blacked out prior to the accident. Hansen claimed that because Woo was no longer alive, the statement was inadmissible hearsay under Utah Rule of Evidence 802 and did not qualify as an exception to the hearsay rule.

The trial court denied Hansen's motions. The court permitted Heath's expert, Dr. Freedman, to testify regarding not only the medical record that included Woo's actual statement, but several other subsequent medical records indicating the syncope diagnosis. Freedman also testified that Woo's medical records and actions were consistent with a blackout, which was most likely caused by a condition known as "ventricular tachycardia," meaning a rapid heartbeat.

The jury returned a verdict for Heath, finding that Woo had suffered a blackout that absolved him of liability for the accident. Hansen now appeals. She raises several issues, including claims that the trial court erred by (1) allowing the medical record containing Woo's statement into evidence through Freedman's testimony, and (2) permitting Freedman to testify as to Woo's other medical records indicating a syncope diagnosis.

## II. STANDARD OF REVIEW

The issues presented concern the admissibility of evidence under Utah Rules of Evidence 802 and 803. Our past cases inconsistently apply the standard of review to trial court rulings under these provisions.[3] The difficulty arises because the exceptions to the hearsay rule listed in rule 803 vary as to whether the trial court's analysis involves a factual or legal determination or some combination thereof.[4] Therefore, the appropriate standard of review of a trial court's decision admitting or excluding evidence under rules 802 and 803 depends on the particular ruling in dispute.

This case concerns rule 803(4), which allows admission of statements made for "purposes of medical diagnosis and treatment." Whether a statement was made for purposes of medical diagnosis or treatment is a mixed question of law and fact. On the one hand, it involves a factual determination that the statement was indeed

---

**2.** Woo's defense is based on the rule of law that if a person driving an automobile is suddenly stricken by an illness that he or she has no reason to anticipate and the illness makes it impossible for him or her to control the car, that person is not liable for negligence associated with the accident. *See Porter v. Price,* 11 Utah 2d 80, 83, 355 P.2d 66, 68 (1960).

**3.** *Compare, e.g., State v. Ireland,* 773 P.2d 1375, 1378 (Utah 1989) (apparently applying correctness standard to finding of admissibility under rule 803(3)) *and State v. Auble,* 754 P.2d 935, 937 (Utah 1988) (same) *with State v. Kaytso,* 684 P.2d 63, 64 (Utah 1984) (per curiam) (holding that no "abuse of prerogative" occurred when

trial court admitted evidence under rule 63(4) (now 803(3))) *and State v. Cude,* 784 P.2d 1197, 1201 (Utah 1989) (applying clear error standard to finding that statement did not fall within rule 803(2)) *and State v. Thomas,* 777 P.2d 445, 449 (Utah 1989) (stating that determination whether evidence meets requirements of 803(2) is in "sound discretion" of trial court).

**4.** Recently, in *State v. Thurman,* 846 P.2d 1256, 1270 n. 11 (Utah 1993), we recognized this distinction by noting that a trial court determination often contains a number of rulings, each of which may require a different standard of review.

made to aid medical diagnosis. This court will not overrule a trial court's factual findings unless they are clearly erroneous.[5]

On the other hand, Hansen also challenges the trial court's legal determination that Woo's statement is admissible even though it is exculpatory in nature. As we have previously stated, we review legal determinations for correctness.[6]

## III. ADMISSIBILITY OF WOO'S STATEMENT AT TRIAL

At trial, Heath presented the medical record containing Woo's statement to his treating physician following the accident. The medical record states in pertinent part, "Patient states he was driving, suddenly lost consciousness [without] warning. Remembers nothing until a lady was pulling him from his car." This testimony strongly supported Heath's assertion that Woo suffered a syncopal episode that absolved him of liability for the accident. The jury evidently believed that to be the case and returned a verdict for Heath. Hansen claims on appeal that the trial court erred in admitting Woo's statement and that the error was prejudicial.

Hansen asserts that Woo's statement constitutes inadmissible hearsay that does not qualify for any of the exceptions to the hearsay rule. Utah Rule of Evidence 802 forbids the admission of hearsay evidence,[7] and rules 803 and 804 provide exceptions to the hearsay rule.[8] Heath claims that Woo's statement is admissible under the hearsay exception found in rule 803(4). That rule states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(4) Statements for purposes of medical diagnosis or treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Rule 803(4) was adopted verbatim from Federal Rule of Evidence 803(4).[9] Therefore, reference to federal cases and the Advisory Committee Note to Federal Rule of Evidence 803(4) is pertinent to give meaning and effect to the Utah rule.[10]

■ To qualify as an exception to the prohibition against the use of hearsay testimony at trial, a statement to a physician must satisfy two elements: (1) The statement must be made with an intent to facilitate medical diagnosis or treatment, and (2) the statement must in fact be reasonably pertinent to diagnosis or treatment.[11] If the statement meets both qualifications, it is admissible because of the "patient's strong motivation to be truthful" when discussing his or her medical condition with a doctor.[12] Such statements carry a "guarantee of trustworthiness" entitling them to an exception from the mandates of the hearsay rule.[13]

5. *Sweeney Land Co. v. Kimball,* 786 P.2d 760, 761 (Utah 1990); *State v. Walker,* 743 P.2d 191, 192 (Utah 1987).

6. *Landes v. Capital City Bank,* 795 P.2d 1127, 1129 (Utah 1990); *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988).

7. Utah R.Evid. 802; *State v. Schreuder,* 726 P.2d 1215, 1222 (Utah 1986).

8. Utah R.Evid. 803, 804; *Schreuder,* 726 P.2d at 1222–23.

9. *See* Fed.R.Evid. 803(4).

10. *See Schreuder,* 726 P.2d at 1223; *see also State v. Gray,* 717 P.2d 1313, 1317 (Utah 1986).

11. *See* Michael H. Graham, *Federal Practice and Procedure* § 6755, at 592–94 (1992); *see also Wilson v. Zapata Off–Shore Co.,* 939 F.2d 260, 272 (5th Cir.1991); *United States v. Narciso,* 446 F.Supp. 252, 289 (E.D.Mich.1977); *Shell Oil Co. v. Industrial Comm'n,* 2 Ill.2d 590, 119 N.E.2d 224, 231 (1954).

12. Advisory Committee Note, Fed.R.Evid. 803(4); *see also Narciso,* 446 F.Supp. at 289; *Shell Oil Co.,* 119 N.E.2d at 231.

13. Advisory Committee Note, Fed.R.Evid. 803(4); *see also Rock v. Huffco Gas & Oil Co.,* 922 F.2d 272, 277 (5th Cir.1991).

In admitting Woo's statement contained in the medical record, the trial court relied on rule 803(4). The court reasoned:

> The Court is going to permit the medical records. The Court agrees with [Heath's] view of Rule 803. There's a built-in safeguard. A patient has an interest in having their [sic] medical needs treated. And trying to mislead or make incorrect statements to a physician, I think, is not the motive that you'd expect the patient to give the doctor. So, I think there's a reasonable safeguard as to that statement.

■ We agree with the trial court's ruling and the reasoning supporting it. Woo made the declaration to his treating physician immediately after being transported from the accident scene to the VA. His physician transcribed the statement in her own handwriting. The statement reflected Woo's medical condition at the time of the accident, something a concerned patient would undoubtedly want to share with his or her doctor. Hence, it was made with intent to facilitate medical diagnosis and treatment. Furthermore, losing consciousness suddenly would undoubtedly prompt medical attention, and any information concerning the episode is reasonably pertinent to diagnosis and treatment.[14] We therefore find ample record evidence that the statement was made for the purpose of medical diagnosis and treatment, and we will not disturb the trial court's ruling on the matter.

■ Hansen also suggests that Woo's statement is inherently untrustworthy because it is self-serving and because Woo could have contrived his "story" about passing out before the accident while in the ambulance on the way to the VA. Al-

though the declaration was ultimately exculpatory, it also expressed a past or present symptom, which is admissible under rule 803(4). A statement that qualifies for a hearsay exception should not be stricken merely because it is self-serving unless there is substantial doubt about its trustworthiness.[15]

At the time of the accident, Woo was 78 years old, was ailing, and had difficulty expressing himself in English. It is doubtful that he knew that, as a matter of law, unconsciousness could absolve him of liability, much less that he had the wherewithal to fabricate a story while in the back of an ambulance. Woo's statement engenders no inherent lack of trustworthiness; on the contrary, we believe the trial court was correct in ruling that it is a reliable declaration, qualifying for exemption from the hearsay rule under section 803(4).

## IV. WOO'S MEDICAL RECORDS

Hansen complains that the medical record containing Woo's initial statement and his subsequent records referring to syncope are inadmissible hearsay because Woo's treating physician was not available to lay the proper foundation for the records and again because Woo's statement is suspect. Having already determined that Woo's statement is reliable, we need only speak to Hansen's allegation that the records should not have been admitted at trial because the proper foundation was missing. In this case, the determination is purely factual. Therefore we review it under a clearly erroneous standard.

■ Evidently, Woo's treating physician was not available to testify at trial. Instead, Heath's expert, Freedman, testified

---

**14.** The veracity of Woo's statement is bolstered by the fact that he was detained at the VA for several days after reporting to the hospital following the accident. He was treated for the syncopal episode at that time.

**15.** See 29 Am.Jur.2d Evidence § 621 (1967) (noting that the real concern regarding self-serving statements is their untrustworthy nature. However, "[s]ince the real objection to self-serving statements is their hearsay character, and since even hearsay is admissible under exceptions to

the general rule of exclusion, declarations may be admitted in evidence under some circumstances even though they are self-serving.", id. § 622, at 675–76 (citations omitted)); see also Shell Oil Co., 119 N.E.2d at 231 (implicitly rejecting claim that a self-serving statement is barred by the hearsay rule if it otherwise qualifies for an exception to the rule). Hence, if a statement is reliable and admissible under an exception to the hearsay rule, its self-serving nature is irrelevant.

as to the records' contents. Under Utah Rule of Evidence 803(6), a custodian or other "qualified witness" may testify at trial concerning records kept in the course of regularly conducted business activity that are regularly recorded.[16] We first note that the parties stipulated to the authenticity of both Woo's and Hansen's medical records. Moreover, the trial transcript reveals that Freedman laid the proper foundation for each separate medical record presented at trial. Although Freedman was not Woo's treating physician, rule 803(6) allows *any* qualified witness to lay the proper foundation for a record, not just the custodian or the person who created the record.[17] We find that rule 803(6) applies to Woo's medical records admitted at trial.

## V. WAIVER

Heath claims that Hansen waived her right to appeal the admission of the medical records by not raising a sufficient objection at trial. Because we hold that the trial court did not err in admitting the records into evidence, we need not address this issue.

We have reviewed the remaining arguments of the parties and find them unavailing.[18] We see no error on the part of the trial court in admitting Woo's statement and medical records. Consequently, we affirm the jury verdict for Heath.

HOWE, A.C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

---

**16.** Utah R.Evid. 803(6); *see also State v. Bertul,* 664 P.2d 1181, 1184 (Utah 1983).

**17.** *See* Utah R.Evid. 803(6); *see also Wilson,* 939 F.2d at 272 (noting that under Fed.R.Evid. 803(6), the person testifying need not have pre-

pared the records nor have personal knowledge of the accuracy of the information contained in them).

**18.** *See State v. Carter,* 776 P.2d 886, 896 (Utah 1989).