2007 UT App 406

**Joseph R. FOX and Linda A. Fox, Plaintiffs and Appellants,**

v.

**BRIGHAM YOUNG UNIVERSITY, a Utah nonprofit corporation, Defendant and Appellee.**

No. 20061132–CA.

Court of Appeals of Utah.

Dec. 28, 2007.

---

Joseph R. Fox and Linda A. Fox, Spanish Fork, Appellants Pro Se.

Thomas W. Seiler, Provo, for Appellee.

Before BENCH, P.J., McHUGH and THORNE, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Plaintiffs Joseph and Linda Fox (the Foxes) appeal the trial court's dismissal of their claims against Defendant Brigham Young University (BYU) for their failure to present expert testimony to prove the cause of Mrs. Fox's injury. The Foxes also appeal the trial court's order denying their objections to the admission of an affidavit and an accident report prepared by BYU volunteer emergency medical technicians (EMTs) on the grounds that the admission of such evidence violates Utah Code section 78–27–33. *See* Utah Code Ann. § 78–27–33 (2002). The trial court properly admitted the EMTs' report and correctly concluded that Utah Code section 78–27–33 was impliedly modified insofar as it is inconsistent with rule 803(4) of the Utah Rules of Evidence. And, because the

EMTs' report contains Mrs. Fox's admissions that her pre-existing medical condition was a factor in her fall, the trial court correctly concluded that the nature of her injury was sufficiently complex as to require an expert to establish a prima facie case on the element of causation. We therefore affirm.

## BACKGROUND

¶2 On April 20, 2004, Mrs. Fox entered BYU's campus and went to the Harman Building to purchase a ticket for an upcoming conference. As Mrs. Fox left the Harman Building, she descended the west stairway and fell. After falling, Mrs. Fox was unable to stand or use her right leg. A passerby noticed Mrs. Fox and sought help.

¶3 In response to the request for help, EMTs arrived and examined Mrs. Fox. The EMTs were volunteers for the Emergency Medical Services team at BYU. BYU provides the van that the EMTs use to respond to field calls, and the EMTs are based in BYU's student center, the Wilkinson Center.

¶4 When the EMTs arrived at the steps of the Harman Building, they found Mrs. Fox in a seated position on the stairs. They observed that Mrs. Fox's right knee was obviously swollen and that there was deformity on both sides of her leg. They also noted that there was no external trauma to her leg or knee, such as scrapes or scuff marks, and that Mrs. Fox's pants were not ripped or torn.

¶5 While the EMTs were assessing her condition and treating her, Mrs. Fox repeatedly stated to them that she felt her right knee go out as she was going down. She explained to the EMTs that she fell down only one stair, that she had been previously diagnosed with osteoarthritis in her right knee, and that there was some missing cartilage in that knee. Mrs. Fox also stated that she did not hold BYU responsible, but that she had always felt that the stairs by the Harman Building were too narrow and have always been dangerous.

¶6 Mrs. Fox's statements, the EMTs' medical observations, and the treatment given at the scene of the fall were transcribed in a report, which Mrs. Fox signed, and were also recounted in an affidavit submitted by one of the responding EMTs. The EMTs applied a vacuum splint to Mrs. Fox's leg and transported her to the Utah Valley Regional Medical Center Emergency Room. She was admitted to the medical center and informed that she had a broken right leg. She then underwent surgery, during which a fixator was attached to her leg.

¶7 Several days after Mrs. Fox's fall, Mr. Fox went to the Harman Building and examined the stairs. He noted that there was some cracking in the stairs' cement and that some of the metal nosings on the stairs were loose. He took pictures of the cement and nosings, as well as the general area where he believed Mrs. Fox had fallen. No further examination of the stairs took place because they were replaced shortly thereafter, an improvement that had been scheduled prior to Mrs. Fox's fall.

¶8 The Foxes subsequently brought suit against BYU for negligence and loss of consortium, asserting that BYU had negligently maintained the stairs outside the Harman Building and that the defective stairs had caused Mrs. Fox to slip, fall, and break her leg. Prior to the scheduled bench trial, BYU brought a motion in limine asserting, among other things, that the negligence claim failed because the Foxes did not have expert testimony to establish their prima facie case. Specifically, BYU contended that the only facts relating to the element of causation within Mrs. Fox's ordinary senses, as a lay witness, were that she was descending the stairs and fell. BYU urged that, by her admissions to the EMTs, Mrs. Fox had introduced a medically complex pre-existing condition, osteoarthritis, as a potential factor in her fall. BYU therefore argued that the biomechanics involved in her fall, the medical cause of her injuries, and the need for the treatment she received were not within the ordinary senses of any layperson.

¶9 The Foxes conceded that they would not be presenting expert testimony at the bench trial. However, they asserted that lay testimony was sufficient to establish their prima facie case because the injury and damages Mrs. Fox experienced were within the realm of common experience and because

there was no significant lapse of time between the injury and the onset of the physical condition for which Mrs. Fox sought compensation. The Foxes also objected to the admissibility of the EMTs' report and the affidavit, arguing that Utah Code section 78–27–33 prohibits the admission of statements made by an injured person that were obtained by agents of her adversary, unless certain procedures are followed. The Foxes asserted that these procedures were not followed and BYU conceded as much at the pre-trial hearing.

¶ 10 The trial court agreed with BYU's position and, recognizing the dispositive nature of the issues presented in the motion in limine, converted the motion to one for dismissal pursuant to rule 41(b) of the Utah Rules of Civil Procedure. The trial court concluded that the EMTs' report and the affidavit were admissible under rule 803(4) of the Utah Rules of Evidence because they contained statements made by Mrs. Fox for purposes of medical diagnosis and treatment. The trial court held that, to the extent that Utah Code section 78–27–33 is inconsistent with rule 803(4), the statute was impliedly repealed by virtue of the Utah Constitution.

¶ 11 The trial court also ruled that the Foxes could not sustain their burden of proof as to causation and damages because Mrs. Fox's lay witness testimony was insufficient to establish their prima facie case. In making this ruling, the court noted that it had been presented with two plausible theories of causation-failure of an osteoarthritic knee or defective stairs-and, absent expert testimony, the court would have to use speculation to choose between the two theories. The trial court also ruled that Mr. Fox's loss of consortium claim failed because it was dependent on the viability and success of Mrs. Fox's negligence claim. Given the failure of both causes of action, the trial court dismissed the Foxes' suit with prejudice.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 The Foxes claim that the trial court erred by determining that Utah Code section 78–27–33 was partially repealed by the Utah Supreme Court's adoption of rule 803(4) of the Utah Rules of Evidence. " 'A constitutional challenge to a statute presents a question of law, which we review for correctness. . . . When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubts in favor of constitutionality.' " *State v. Morrison*, 2001 UT 73, ¶ 5, 31 P.3d 547 (omission in original) (quoting *State v. Lopes*, 1999 UT 24, ¶ 6, 980 P.2d 191).

¶ 13 Further, the Foxes argue that the trial court erred by admitting the EMTs' report and the affidavit containing Mrs. Fox's out-of-court statements because the statements were procured by agents of the Foxes' adversary, BYU. "The standard of review when considering the admissibility of out-of-court statements under the Utah Rules of Evidence depends on 'whether the trial court's analysis involves a factual or legal determination or some combination thereof.' " *State v. Parker*, 2000 UT 51, ¶ 13, 4 P.3d 778 (quoting *Hansen v. Heath*, 852 P.2d 977, 978 (Utah 1993)). "Whether a statement was made for purposes of medical diagnosis or treatment is a mixed question of law and fact." *Hansen*, 852 P.2d at 978. Thus, where the trial court's analysis "involves a factual determination that the statement was indeed made to aid medical diagnosis," *id.* at 978–79, this court will "apply a clearly erroneous standard of review to those [factual] findings," *Parker*, 2000 UT 51, ¶ 13, 4 P.3d 778. But where the court's analysis involves a legal determination, such determination will be reviewed "for correctness." *Hansen*, 852 P.2d at 979.

¶ 14 Finally, the Foxes claim that the trial court erred in dismissing their suit against BYU for failure to present expert testimony to establish a prima facie case on the element of causation. "As with a directed verdict, whether dismissal was appropriate for failure to make a prima facie case is a question of law reviewed for correctness." *Grossen v. DeWitt*, 1999 UT App 167, ¶ 8, 982 P.2d 581. "An appellate court will not reverse the findings of fact of a trial court sitting without a jury unless they are . . . clearly erroneous." *Orton v. Carter*, 970 P.2d 1254, 1256 (Utah 1998) (omission in original) (internal quotation marks omitted). Furthermore, "we review a trial court's legal

conclusions for correctness, according the trial court no particular deference." *Id.*

## ANALYSIS

### I. Admissibility of the EMTs' Report

¶ 15 The Foxes claim that the EMTs' report and the affidavit were inadmissible because they included out-of-court statements that were obtained in violation of Utah Code section 78–27–33 and that the statute has not been impliedly repealed, even partially, by the Utah Supreme Court's adoption of rule 803(4) of the Utah Rules of Evidence. The Utah Constitution grants the supreme court the power to "adopt rules of procedure and evidence to be used in the courts of the state." Utah Const. art. VIII, § 4. In 1985, the supreme court used its constitutional power to adopt the Federal Rules of Evidence. *See In Re: Rules of procedure and evidence to be used in the courts of this state,* 18 Utah Adv. Rep. 3 (Utah 1985). At the same time, the supreme court adopted only those previously existing statutory rules of procedure and evidence that were "not inconsistent with or superseded by [the new] rules of procedure and evidence." *Id.* In doing so, the supreme court made clear that "[a]ny existing statutes inconsistent with these rules ... will be impliedly repealed." Utah R. Evid. Preliminary Note; *see, e.g., State v. Fulton,* 742 P.2d 1208, 1217 (Utah 1987) (noting that the adoption of rule 601 of the Utah Rules of Evidence impliedly repealed section 78–24–2(2) and its presumption of incompetency for children under ten years of age). In order for the legislature to "amend the Rules of Procedure and Evidence adopted by

the Supreme Court," it may only do so "upon a vote of two-thirds of all members of both houses." Utah Const. art. VIII, § 4.

¶ 16 Utah Code section 78–27–33 existed at the time the supreme court adopted the new set of rules of evidence. Pursuant to this statute, a statement "obtained from an injured person within 15 days of an occurrence ... by a person whose interest is adverse" is not admissible evidence unless the adverse person leaves a "written verbatim copy of the statement ... with the injured party at the time the statement was taken," and the injured party does not disavow the statement "in writing" within a specified time. Utah Code Ann. § 78–27–33 (2002). This statute was enacted in 1973. *See* Act of February 23, 1973, ch. 208, § 2, 1973 Utah Laws 709.[1]

¶ 17 Since 1985, however, rule 803(4) of the Utah Rules of Evidence permitted the admission of "[s]tatements made for purposes of medical diagnosis or treatment," as well as statements "describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof," despite the fact that such statements may be hearsay. Utah R. Evid. 803(4). The only other qualification is that the statements must be "reasonably pertinent to diagnosis or treatment." *Id.* "If the statement meets both qualifications, it is admissible because of the 'patient's strong motivation to be truthful' when discussing his or her medical condition with a doctor." *Hansen v. Heath,* 852 P.2d 977, 979 (Utah 1993) (quoting Fed.R.Evid. 803(4) advisory committee's note).[2]

---

1. Although the statute was amended in 1998, after the supreme court's adoption of the rules of evidence, the amendment was minor and does not signal the legislature's attempt to amend the rules of evidence adopted by the supreme court. The statute, as originally written, allowed statements procured by a "law enforcement officer" to be admitted, regardless of whether the law enforcement officer was adverse or may become adverse to the injured party. In 1998, the legislature merely substituted the phrase "peace officer" for "law enforcement officer." *See* Act of March 4, 1998, ch. 282, § 82, 1998 Utah Laws 1019. Moreover, the house bill that brought about the amendment was aimed at modifying the Utah Code with respect to peace officers. *See* Act of March 4, 1998, ch. 282, 1998 Utah

Laws 978 (describing the act as "relating to public safety; modifying and clarifying the various classifications of peace officers and the requisite training and certification; making technical changes; and providing a coordination clause"). The bill cannot be construed, as the Foxes assert, as intended to address inconsistencies between Utah Code section 78–27–33 and the Utah Rules of Evidence.

2. Statements made for purposes of medical diagnosis and treatment "need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included." Fed.R.Evid. 803(4) advisory committee's note.

¶ 18 Therefore, there exists an inconsistency as to the admissibility of evidence in the limited circumstance where the injured party's adversary retains bona fide medical personnel who obtain statements from the injured party for the purpose of medical diagnosis and treatment. Rule 803(4) of the Utah Rules of Evidence permits the admission of all statements made for the purpose of medical diagnosis and treatment, such as Mrs. Fox's statements to the BYU EMTs, regardless of whether the medical personnel to whom the statements were made are adverse to the injured party or simply neutral. Without the requisite notice, however, Utah Code section 78–27–33 would not permit the admission of statements made for the purpose of medical diagnosis and treatment when the statements are made to medical personnel who also serve as agents of the injured party's adversary.

¶ 19 The facts of the instant case highlight the inconsistency between rule 803(4) of the Utah Rules of Evidence and Utah Code section 78–27–33. Here, the trial court correctly concluded that the EMTs responding to Mrs. Fox's fall, while volunteers, were nonetheless agents of BYU because they worked under BYU's name, used equipment supplied by BYU, and operated from BYU's buildings. *See Nelson v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints,* 935 P.2d 512, 512 (Utah 1997) (acknowledging that a person may be a "volunteer agent" of a principal); *see also* Restatement (Third) Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."). BYU is, undoubtedly, Mrs. Fox's adversary in the present suit. Furthermore, the court committed no clear error by finding that Mrs. Fox's statements to the EMTs were in fact made for the purpose of receiving a medical diagnosis of her condition and treatment of her injury.

¶ 20 Given this inconsistency, we conclude that rule 803(4) of the Utah Rules of Evidence partially repealed, or in other words,

limited the applicability of Utah Code section 78–27–33. We emphasize, however, that Utah Code section 78–27–33 is invalid only to the extent that it is inconsistent with rule 803(4), i.e., in the very narrow circumstance where an adversary retains bona fide medical personnel who obtain statements from injured persons for the limited and exclusive purpose of medical diagnosis and treatment. In circumstances where statements obtained by a potentially adverse party are not for purposes of medical diagnosis and treatment, there is no inconsistency between the rule of evidence and Utah Code section 78–27–33, and the statute remains viable.

## II. Dismissal for Lack of Expert Testimony

¶ 21 The Foxes contend that expert testimony was not required to establish a prima facie case regarding the cause of Mrs. Fox's injuries because her fall, broken leg, and subsequent medical treatment were temporally connected and within the common knowledge and experience of a layperson. Plaintiffs carry the "burden [of] establish[ing] a prima facie case of negligence," *Clark v. Farmers Ins. Exch.,* 893 P.2d 598, 601 (Utah Ct.App.1995), including "proximate and actual causation of the injury," *id.* at 600; *see also Jackson v. Colston,* 116 Utah 295, 209 P.2d 566, 568 (1949) ("It is fundamental that the burden rests upon the plaintiff to establish the causal connection between the injury and the alleged negligence of the defendant."). "[T]he causal connection between the alleged negligent act and the injury is never presumed and ... this is a matter the plaintiff is always required to prove affirmatively." *Jackson,* 209 P.2d at 568. Although "the question of proximate causation is generally reserved for the jury," *Clark,* 893 P.2d at 601 (internal quotation marks omitted), "the trial court may rule as a matter of law on this issue ... if ... 'there is no evidence to establish a causal connection, thus leaving causation to jury speculation,'" *id.* (quoting *Steffensen v. Smith's Mgmt. Corp.,* 820 P.2d 482, 487 (Utah Ct.App.1991)).

¶ 22 In Utah, "[t]he need for positive expert testimony to establish a causal link between the defendants' negligent act and

the plaintiff's injury depends on the nature of the injury." *Beard v. K–Mart Corp.*, 2000 UT App 285, ¶ 16, 12 P.3d 1015 (internal quotation marks omitted). Thus, "[w]here the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding, there must be expert testimony that the negligent act probably caused the injury." *Id.* (citations and internal quotation marks omitted). In such cases, the "testimony of lay witnesses regarding the need for specific medical treatment is inadequate to submit the issue to the jury." *Id.* It is only in "the most obvious cases" that a plaintiff may be excepted from the requirement of using expert testimony to prove causation. *Id.*

¶ 23 Mrs. Fox's slip-and-fall negligence suit is not a case that is excepted from the requirement that a plaintiff use expert testimony to establish a causal link between the defendant's negligent act and her injury. At the scene of Mrs. Fox's fall, she first attributed the cause of her fall to the fact that her knee "gave out." She admitted to the EMTs that she had been diagnosed with a pre-existing condition, osteoarthritis, in that same knee. Thus, by her own initial explanation of the cause of her fall and her admission of an osteoarthritic condition, Mrs. Fox tied the cause of her fall to medical factors sufficiently complicated to be beyond the ordinary senses and common experience of a layperson. Mrs. Fox's lay testimony would not have been sufficient to determine whether the need for her medical treatment, the surgery and attachment of the fixator, was caused by BYU's allegedly defective stairs or the failure of her own arthritic knee. Although Mrs. Fox could testify that she descended the stairway, fell, and experienced pain, she needed expert testimony to establish her prima facie case of causation and to prevent the fact-finder from resorting to speculation. Absent this expert testimony, the trial court correctly ruled that Mrs. Fox had failed to prove the element of causation and her negligence claim failed as a matter of law.[3]

¶ 24 The trial court also correctly ruled that Mr. Fox's claim for loss of consortium failed because it was dependent on the success of Mrs. Fox's negligence claim. Under Utah statute, a "spouse's action for loss of consortium ... [is] derivative from the cause of action in behalf of the injured person[,] and ... it may not exist in cases where the injured person would not have a cause of action." Utah Code Ann. § 30–2–11(5)(a), (b) (2007). Mr. Fox's loss of consortium claim ceased to exist when Mrs. Fox's negligence claim failed.

## CONCLUSION

¶ 25 The trial court did not err in admitting the EMTs' report and the affidavit because they contained admissible hearsay pursuant to rule 803(4) of the Utah Rules of Evidence. Although Utah Code section 78–27–33 may have barred such reports, that statute is inconsistent with rule 803(4) and impliedly modified to the extent of the inconsistency. The trial court did not err in dismissing the Foxes' negligence claim for failure to present expert testimony on the

---

**3.** We note that, in this case, it was the plaintiff herself who presented the two theories of causation. By highlighting these dueling theories and emphasizing that under one theory BYU's alleged negligence was not the cause of Mrs. Fox's fall, BYU was not presenting an affirmative defense, such as an intervening cause, for which it would have carried the burden of proof. *Compare Nixdorf v. Hicken*, 612 P.2d 348, 353 n. 15 (Utah 1980) (indicating that an "intervening cause may be used as a defense against the plaintiff's proof of proximate causation"), *with State v. Malaga*, 2006 UT App 103, ¶ 22, 132 P.3d 703 (distinguishing between a defense that contemplates an intervening force as the cause of the injury and a defense that presents an alternative version of events "which does not implicate intervening causes at all"); *see also Seale v. Gowans*, 923 P.2d 1361, 1363 (Utah 1996) (stating that defendants have the burden of proof with respect to affirmative defenses). Rather, BYU was refuting the Foxes' preferred theory and reminding the court that "the burden of proof is on the plaintiff to show that the injury was negligently caused by [the] defendant, [and that] it is not enough to show the injury ... might have occurred from negligence and many other causes." *Baxter v. Snow*, 78 Utah 217, 2 P.2d 257, 265 (1931) (internal quotation marks omitted). Thus, "[w]hen a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, [the plaintiff's] proof tends to establish neither." *Id.* (internal quotation marks omitted).

element of causation because the factors associated with Mrs. Fox's fall and injury were sufficiently medically complex to require such testimony. Because the loss of consortium claim was dependent on the viability of the negligence claim, the trial court properly dismissed it as well.

¶ 26 We affirm.

¶ 27 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE JR., Judges.