**2015 UT App 306**

## THE UTAH COURT OF APPEALS

DANIEL MAJORS AND PATRISHA MAJORS,
Appellants,
*v.*
KENT OWENS AND KENNECOTT UTAH
COPPER CORPORATION,
Appellees.

Opinion
No. 20140465-CA
Filed December 24, 2015

Third District Court, Salt Lake Department
The Honorable Paul G. Maughan
No. 110916080

Karra J. Porter, Barton H. Kunz II, William R.
Rawlings, and Travis B. Alkire, Attorneys
for Appellants

Michael P. Petrogeorge, Attorney for Appellees

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
STEPHEN L. ROTH and JOHN A. PEARCE concurred.

TOOMEY, Judge:

¶1 Daniel and Patrisha Majors appeal from the district court's grant of summary judgment in favor of Kent Owens and Kennecott Utah Copper Corporation (collectively, Defendants). The Majorses contend that the district court erred by excluding the causation testimony of their treating physicians and by then granting summary judgment on the basis that the Majorses failed to offer evidence regarding the causation element of their tort claim. We agree and therefore reverse and remand.

BACKGROUND

¶2     On July 18, 2009, the Majorses were involved in a motor vehicle collision in Magna, Utah. Kennecott employee Kent Owens was driving the other vehicle involved in the crash. The Majorses sued Owens and Kennecott, raising a claim for negligence against Owens and seeking to hold Kennecott vicariously liable. The Majorses alleged that the motor vehicle collision caused them to suffer various injuries, including neck and back pain.

¶3     In support of their claim, the Majorses disclosed several treating physicians as witnesses: Benjamin Krogh, Layne Hermansen, and Kade Huntsman. The physicians were designated as witnesses who would provide expert testimony "with regard to the treatment they have provided" and "regarding the issue of causation as it relates to their treatment to the subject accident." Defendants deposed each of these witnesses.

¶4     After discovery, Defendants filed a combined motion in limine and motion for summary judgment. As to the motion in limine, Defendants argued that the court should preclude the Majorses' treating physician experts from testifying on the issue of causation because the physicians' opinions were not based on any reliable facts or methodology. They supported this argument by asserting that the physicians' opinions were based on the Majorses' reports and unverified factual information about the collision and that the opinions did not take into consideration prior traumas or preexisting conditions. Relying on these purported shortcomings and one treating physician's statement that he "assumed" that the Majorses' injuries were caused by the motor vehicle collision, Defendants asserted that all of the Majorses' designated experts "merely assumed that the Accident was the cause of the alleged injuries." Thus, Defendants argued, the proposed testimony of the treating physicians failed to establish a causal connection between the Majorses' alleged damages and the collision and did not meet

the threshold requirements for admissibility under rule 702 of the Utah Rules of Evidence. Defendants therefore urged the court to grant their motion for summary judgment because the Majorses failed to produce admissible evidence to support a necessary element of their claim.

¶5    The Majorses opposed the motions. They argued that their treating physicians' testimony on the issue of causation met the threshold for admissibility and that their physicians' opinions were based on reliable facts and methodology because the physicians "took a history of the subject event, a medical history, performed physical examinations, provided treatment and reviewed imaging studies in arriving at their opinions." The Majorses asserted that Defendants' "attacks on the reliability of [the physicians'] testimony would go only to the weight of the evidence, not to the . . . admissibility." The Majorses further argued that summary judgment was inappropriate because they offered admissible evidence supporting the elements of their claim and because disputed issues of fact remained for trial.

¶6    The district court granted both motions. It agreed with Defendants and determined that the Majorses' "treating physicians' causation opinions are unreliable and inadmissible under rule 702." It reasoned that "an expert must do more than merely establish a chronological relationship between an accident and the patient's symptoms." The court explained that instead "there must be an analysis of the evidence which establishes a causal link that goes beyond a temporal relationship." It then determined that the treating physicians "reach[ed] assumptions based on chronology without any underlying analysis of the [Majorses'] prior medical problems." The court added,

> [T]he deposition testimony reveals that each of the three physicians have uniformly arrived at their opinions based on assumptions, without performing any independent analysis or evaluation or considering the [Majorses'] significant medical

histories as contributing or aggravating factors to their medical conditions. Indeed, . . . in reaching their causation opinions, the physicians simply make a temporal connection between the accident and the [Majorses'] self-reported onset of symptoms. . . . [T]heir singular assumption is that the accident must have caused the alleged injuries. Yet, the physicians appear to acknowledge their complete failure to independently analyze other potential causes . . . .

The court then concluded that if the treating physicians were allowed to testify, "the jury would engage in speculation rather than fact finding." As a result, the court excluded the treating physicians' testimony and ruled that in the absence of this testimony, the Majorses could not establish the required element of causation. Accordingly, the district court dismissed the Majorses' claim with prejudice. This appeal ensued.

## ISSUES AND STANDARDS OF REVIEW

¶7     The Majorses contend the district court exceeded its discretion by excluding their treating physicians' testimony on the issue of causation. "'The trial court has wide discretion in determining the admissibility of expert testimony,' and we will disturb a court's exclusion of expert testimony only when it 'exceeds the limits of reasonability.'" *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶¶ 16, 31, 269 P.3d 980 (quoting *Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 5, 242 P.3d 762).

> Our review of the district court's exercise of its discretion include[s] review to ensure that no mistakes of law affected a lower court's use of its discretion. Thus, if the district court erred in interpreting Utah Rule of Evidence 702 when it

[excluded the expert testimony], it did not act within the limits of reasonability, and we will not defer to the evidentiary decision.

*Eskelson*, 2010 UT 59, ¶ 5 (first alteration in original) (citation and internal quotation marks omitted).

¶8 The Majorses also contend that the district court erred in granting summary judgment on the ground that they failed to provide admissible evidence to support the causation element of their claim. This court "reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

ANALYSIS

I. Expert Testimony

¶9 The parties implicitly agree that expert witness testimony on causation is required to establish a causal link between Defendants' alleged negligent act and the Majorses' injuries. *See Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 22, 176 P.3d 446. The parties similarly do not dispute that treating physicians are capable of providing such testimony. And the parties agree that the treating physicians in this case offered opinions with regard to causation. But they disagree about whether the methods used by the physicians in coming to those opinions are reliable. In particular, the Majorses contend that the district court improperly concluded that the experts' testimony did not meet the threshold indicia of reliability required for admission under rule 702 of the Utah Rules of Evidence. Thus, the issue on appeal is whether the treating physicians' opinions regarding causation were sufficiently reliable to be admissible under rule 702.

¶10　Rule 702 allows a court to admit a qualified expert's testimony, Utah R. Evid. 702(a), if the proponent makes "a threshold showing that the principles or methods that are underlying in the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts," *id.* R. 702(b). The district court in this case concluded that the Majorses' treating physicians did not meet rule 702's threshold, because, in the district court's view, the physicians merely assumed causation based on the "temporal connection between the accident and the [Majorses'] self-reported onset of symptoms" and they did not consider the Majorses' "medical histories as contributing or aggravating factors." The district court faulted the treating physicians for failing to perform independent analyses or evaluations, concluding that they reached "assumptions based on chronology without any underlying analysis of the [Majorses'] prior medical problems."

¶11　The Majorses contend that the district court erred in excluding the treating physicians' testimony on this basis. They assert that in reaching conclusions regarding the causation of their injuries, their treating physicians appropriately relied upon the temporal relationship between the collision and injuries and upon the patients' descriptions of trauma and the onset of symptoms. Defendants seemingly concede that treating physicians may take such considerations into account.[1] But Defendants contend that "under the facts of this case, it was not sufficient for the treating physicians to merely assume causation

---

1. This is consistent with Utah law. *See, e.g., Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶¶ 13, 16, 242 P.3d 762 (concluding that a medical expert could base his opinion on the plaintiff's mother's description of a trauma in her deposition testimony); *Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 25, 240 P.3d 107 (discerning no error in the expert's "reliance on the timing of the onset of [the plaintiff's] symptoms" following injury).

based on these factors alone." The Majorses respond that their experts' opinions were based on other appropriate considerations, including physical examinations and review of imaging studies or records.

¶12   The district court acts as an evidentiary "'gatekeeper,'" performing "a crucial but limited function" under rule 702 by screening out unreliable expert testimony. *State v. Jones*, 2015 UT 19, ¶ 26, 345 P.3d 1195. In this role, the court must "ensur[e] a minimal 'threshold' of reliability for the knowledge that serves as the basis of an expert's opinion." *Id.* Although courts should approach "proposed expert testimony with rational skepticism," the threshold showing under rule 702(b) "requires only a basic foundational showing of indicia of reliability for the testimony to be admissible, not that the opinion is indisputably correct." Utah R. Evid. 702 advisory committee note; *see also Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 12, 242 P.3d 762.

¶13   "Under [rule 702], the line between assessing reliability and weighing evidence can be elusive," *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 47, 269 P.3d 980, but the Utah Supreme Court has cautioned that district courts "must be careful not to displace the province of the factfinder to weigh the evidence," *Jones*, 2015 UT 19, ¶ 26. In other words, the district court's "role is only preliminary; the factfinder bears the ultimate responsibility for evaluating the accuracy, reliability, and weight of the testimony." *Gunn Hill*, 2012 UT App 20, ¶¶ 33, 47; *see also State v. Sheehan*, 2012 UT App 62, ¶ 28, 273 P.3d 417 ("[T]here are two separate reliability determinations: admissibility, which is a legal determination the court makes, and the weight assigned to the evidence admitted at trial, which is a factual determination made by the fact finder."); Utah R. Evid. 702 advisory committee note ("Contrary and inconsistent opinions may simultaneously meet the threshold [under rule 702]; it is for the factfinder to reconcile—or choose between—the different opinions."). Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

¶14    The Utah Supreme Court's decision in *Eskelson v. Davis Hospital & Medical Center*, 2010 UT 59, 242 P.3d 762, in which it reversed a district court's exclusion of a non-treating physician's expert testimony, illustrates the proper application of rule 702. *Id.* ¶ 22. In that case, the child plaintiff alleged that the defendant physician perforated his eardrum during an attempt to extract a foreign object from his ear. *Id.* ¶ 1. First, the supreme court concluded that under rule 702(b)(1), the expert's testimony "regarding his experience as a physician, in dealing with situations similar to [the plaintiff's], constitute[d] a threshold showing of reliability." *Id.* ¶ 15. The court explained that "[w]hat is required for a threshold showing of reliability will vary depending upon the complexity of the particular case," noting that "[i]dentification of a methodology is not necessary where exposure to a nearly identical situation forms the basis of the expert's opinion." *Id.*

¶15    Second, the supreme court concluded that under rule 702(b)(2), the expert had based his opinion on sufficient facts or data. *Id.* ¶¶ 16–17. It explained that "[a]lthough an expert cannot give opinion testimony that flies in the face of uncontroverted physical facts also in evidence, an expert can rely on his own interpretation of facts that have a foundation in the evidence, even if those facts are in dispute." *Id.* ¶ 16 (citation and internal quotation marks omitted). Once the expert's opinion was admitted, the court explained, the defense would "have the opportunity to explore the factual basis" for the opinion and "point out the dispute over the facts on which [the expert] relies." *Id.* ¶ 17.

¶16    Third, the supreme court determined that the expert had reliably applied his specialized knowledge to the facts of the case as required by rule 702(b)(3). *Id.* ¶¶ 18–19. In reversing the district court's decision that the expert's testimony "was mere speculation and not sufficient to show causation," the supreme

court concluded that by relying on his specialized knowledge of removing objects from childrens' ears to testify that a "sudden instance of pain accompanies" the plaintiff's claimed injury, the expert "did more than establish a chronological relationship" between the plaintiff's injury and the defendant's allegedly negligent action. *Id.* ¶ 19. Because the expert's opinion met all three requirements of rule 702(b), the supreme court ruled that the opinion should be admitted at trial. *Id.* ¶ 22.

¶17 In a slightly different context, this court evaluated whether a plaintiff introduced adequate expert medical testimony on the issue of causation in *Beard v. K-Mart Corp.*, 2000 UT App 285, 12 P.3d 1015. There, the plaintiff, who fell after a K-Mart employee accidently struck her, offered the testimony of her treating surgeon. *Id.* ¶¶ 2, 18. The surgeon testified extensively about the causes of the plaintiff's pain and the surgeon's treatments, and he explained that there was a chronological association between the time of the incident and the plaintiff's onset of symptoms. *Id.* ¶ 18. But ultimately, the surgeon testified that he could not say to a reasonable degree of medical probability that the accident in question caused the need for her surgeries. *Id.* ¶¶ 3, 18–19. On appeal, this court determined that this expert testimony was not sufficient to allow the jury to consider the issue of causation. *Id.* ¶ 20. It concluded that the surgeon's expert testimony "merely established a chronological relationship between the accident and [the plaintiff's] symptoms." *Id.* The court explained, "Without the required expert medical opinion linking the injury to the necessity of the [plaintiff's] surgery, a jury would simply be speculating about a linkage that is beyond its knowledge and experience." *Id.*

¶18 Although *Beard*'s analysis addressed the adequacy of the expert's causation testimony, not its admissibility, the district court analogized this case to *Beard*, explaining that "precisely like the expert testimony in *Beard*, the [Majorses'] treating physicians reach assumptions based on chronology without any underlying analysis of the [Majorses'] prior medical problems."

But the present case is distinguishable from *Beard* in a significant respect. There, the physician expressly testified that he could not tie the plaintiff's accident to her symptoms to "any degree of reasonable probability." *Id.* ¶ 19. In contrast, the treating physicians here testified during their depositions that at least some of the Majorses' symptoms were caused by the motor vehicle collision. Huntsman specifically testified that "the motor vehicle accident caused [Daniel's] disc herniation," and Huntsman's deposition included testimony that he "'believe[d] beyond a reasonable degree of medical probability'" that the collision was "the most likely . . . cause" of Patrisha's pain and herniation. Similarly, Hermansen testified that the Majorses' complaints were a "direct result" of the auto accident. And although Krogh stated that he "assumed" some injuries were the result of the collision, he did not qualify his conclusion at other points in his deposition. Particularly, he stated, "[T]he main cause of the [Majorses' injuries] was a result of the accident." Krogh then specified that Daniel suffered neck and back pain and Patrisha suffered neck and upper-back pain "as a result of" the accident. Thus, all three physicians offered their opinions on causation.

¶19   Given these opinions and the framework set out in *Eskelson*, to determine whether the district court exceeded its discretion in excluding the Majorses' expert evidence, we must evaluate whether the principles underlying the treating physicians' opinions are reliable, are based upon sufficient facts or data, and were reliably applied to the facts of this case. *See* Utah R. Evid. 702(b). First, bearing in mind that a threshold showing of reliability depends on the complexity of a specific case, we conclude that the treating physicians' opinions met this threshold. These physicians testified that they each examined and treated the Majorses and considered the cause of the Majorses' physical complaints. From the portions of the depositions in the record, it is evident that the physicians' methodology involved personally examining the Majorses as patients, reviewing imaging studies, and taking into account the

Majorses' statements about their medical histories. This methodology appears consistent with the methodology any treating physician would employ when evaluating whether a patient's symptoms were caused by the patient's involvement in an automobile collision. Thus, the evidence established that the treating physicians' opinions were sufficiently reliable to meet rule 702(b)(1)'s threshold.

¶20    Next, under rule 702(b)(2), we assess whether the treating physicians' principles or methods underlying their testimony "are based upon sufficient facts or data." *See id.* R. 702(b)(2). Defendants seem to contend that the physicians' opinions failed to meet this threshold because their assessments about causation relied solely on the Majorses' patient statements and on the temporal proximity between the collision and onset of symptoms. Although the treating physicians did take these factors into consideration, their opinions were also informed by their physical examinations and the imaging studies. These factors, taken together, provide sufficient facts or data to support the treating physicians' opinions on causation. Rule 702(b)(2) was therefore satisfied. Furthermore, we are not convinced the treating physicians were required to conduct an independent investigation to verify the Majorses' accounts of the collision and the onset of the symptoms. Rather, treating physicians are justified in relying on patients' statements as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *See id.* R. 703.

¶21    Finally, we consider whether the treating physicians reliably applied their principles or methods to the facts. *See id.* R. 702(b)(3). Again, the Majorses were required to make only a threshold showing on this point. The district court's reasoning for excluding the treating physicians' causation opinions centered on the physicians' application of their methods to the facts. But the district court's stated basis for exclusion is insufficient to convince us that the threshold was not met.

¶22　The district court's rationale for excluding the expert opinions focused on testimony that indicated the treating physicians did not consider other potential causes of the Majorses' injuries. According to Defendants and the district court, this failure renders the treating physicians' causation analyses unreliable as applied to the facts and thus inadmissible. But this failure does not necessarily lead to a conclusion that their opinions did not meet rule 702's threshold for admission. Even though the treating physicians indicated that they did not consider other potential causes, their testimony implicitly indicates that their evaluations of the Majorses revealed conditions that were consistent with injuries sustained in an automobile collision.[2] As such, Defendants' argument that the physicians should also have eliminated other potential contributors to the Majorses' physical condition provides fodder for cross-examination and seems more targeted to the weight of their opinions, not the admissibility. We therefore disagree with the district court that these physicians' testimony would allow the jury only to speculate as to causation.

¶23　Furthermore, as in *Eskelson*, the treating physicians' testimony did more than establish a chronological relationship between the Majorses' physical injuries and the motor vehicle collision. Not only did all three physicians explain that they relied on the Majorses' description of their injuries as beginning after their involvement in the collision, but they also testified that the Majorses did not exaggerate their symptoms. Through this testimony, the physicians opined that the Majorses' complaints were consistent with injuries sustained in a motor vehicle collision. Specifically, Huntsman and Hermansen both testified to the effect that the Majorses' complaints were consistent with their symptoms. Both added that their findings

---

2. We note that the deposition transcript suggests that Huntsman did consider degeneration in relation to the causation of Patrisha's symptoms.

from the physical exams matched Daniel's MRI results. Huntsman also indicated that although he first treated the Majorses in late 2010, it is "pretty common" for patients like the Majorses to receive treatment a year after a collision. Similar to the other physicians, Krogh, who evaluated the cause of the Majorses' complaints within a week after the collision, testified that he was "not so much" concerned that Daniel exaggerated his symptoms, and that Daniel's degree of pain "seemed to be more consistent" with what Krogh found on his physical exam. Thus, the treating physicians indicated that the Majorses' complaints would be explained by their involvement in the collision with Owens.

¶24    Although the foundation for the treating physicians' causation opinions appears somewhat thin, we believe the treating physicians' application of their knowledge to the facts met the minimal threshold showing of reliability under rule 702(b)(3). In our view, the district court's preliminary assessment of the treating physicians' reliability displaced the role of the jury to evaluate the weight to be given to the evidence. *See Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶¶ 47–48, 269 P.3d 980. Certainly Defendants and the district court have identified weaknesses in the treating physicians' expert opinions—the failure to consider other potential causes, for example—but Defendants will have the opportunity to expose and probe such weaknesses once the opinions are admitted at trial. *See Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 17, 242 P.3d 762. Because the treating physicians' opinions regarding causation met the threshold indicia of reliability for admission under rule 702, we conclude that the district court exceeded its discretion in granting Defendants' motion to exclude the evidence.

## II. Summary Judgment

¶25    The Majorses contend that because the district court's "sole basis for granting summary judgment was its ruling excluding all of Daniel and Patrisha's expert testimony on

causation," the district court's grant of summary judgment must also be reversed. Causation is indisputably an essential element of the Majorses' claim. *See Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 21, 176 P.3d 446. Generally, "[a] plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the [elements] of [a] prima facie case justifies a grant of summary judgment to the defendant." *United Fire Group v. Staker & Parson Cos.*, 2014 UT App 170, ¶ 8, 332 P.3d 394 (alterations in original) (citation and internal quotation marks omitted). After first excluding the testimony of the Majorses' designated expert witnesses on the issue of causation, the district court next determined that "[w]ithout [those] causation opinions . . . there is no admissible evidence in the record by which the [Majorses] can prove the causation element of their negligence claim."

¶26 Because we have concluded that the district court exceeded its discretion in excluding the Majorses' expert testimony on the issue of causation, *see supra* ¶ 24, we conclude that the Majorses offered admissible evidence on causation that was sufficient to create a material dispute of fact. Accordingly, we also reverse the district court's grant of summary judgment.[3]

---

3. In the alternative, Defendants contend that even if we reverse the district court's exclusion of the treating physicians' testimony as to the issue of cause in fact, we should nevertheless affirm the grant of summary judgment because the physicians' testimony could not establish proximate cause. We disagree. A finding of cause in fact assesses whether "a defendant's negligence, as a factual matter, played a role in bringing about the plaintiff's injury," *Raab v. Utah Ry.*, 2009 UT 61, ¶ 22, 221 P.3d 219, whereas "[p]roximate cause is 'that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred,'" *Dee v. Johnson*, 2012 UT App 237, ¶ 4, 286 P.3d 22 (quoting *Bunker*

(continued…)

CONCLUSION

¶27    We conclude that under the facts of this case, the district court exceeded its discretion in excluding the Majorses' expert testimony on the issue of causation because the court excluded the expert evidence due to its lack of weight rather than its failure to meet the threshold showing of reliability under rule 702. Accordingly, we reverse the court's grant of Defendants' motion to exclude the expert evidence. Because the district court granted summary judgment to Defendants on the ground that the Majorses failed to offer admissible evidence on the causation element of their claim, we also reverse that order and remand the matter for trial.

————————

(…continued)
*v. Union Pac. R.R.*, 114 P. 764, 775 (Utah 1911)). We conclude that the physicians' expert opinions are admissible as to proximate cause for the same reasons they are admissible as to causation in general. Once evidence of factual causation is shown, it is up to the jury to determine on all the facts if it also meets the legal requirements of proximate cause. Accordingly, we conclude that the Majorses have offered admissible evidence to create a disputed issue as to proximate cause.